Glenn COMBS, et al., Plaintiffs,

v.

UNITED STATES of America,
Defendant.

Civ. A. No. 86–42.

United States District Court,
E.D. Kentucky,
Lexington.

June 4, 1991.

Glenn E. Acree, McBrayer, McGinnis, Leslie & Kirkland, Lexington, Ky., for plaintiffs.

Dell W. Littrell, Peter M. Davenport, Asst. U.S. Attys., Lexington, Ky., for defendant.

## MEMORANDUM OPINION AND ORDER

FORESTER, District Judge.

This matter is before the court regarding jurisdiction issues raised by the United States in its Prehearing Memorandum and in a prior Motion to Dismiss. In addition, the plaintiffs filed a Motion in Limine concerning the implication of the doctrine of law of the case to preclude consideration of these issues because they were raised in an earlier appeal to the Sixth Circuit Court of Appeals. The parties have filed several memoranda briefing the law and issues.

## FACTUAL BACKGROUND

Plaintiff Glenn Combs brings this action seeking compensation for personal injuries he sustained as a result of an automobile accident in which Combs was involved in a collision with Staff Sergeant Elmer Hall, Jr., of the United States Army Reserve. Glenn Combs received numerous injuries in the collision, including several fractures of his leg and hip bones, a skull fracture, multiple bruises to his arms, nose and chest, as well as severe blood loss. Glenn Combs claims these injuries resulted in substantial medical expenses, severe pain and mental anguish to him, and significantly impaired his ability to work. His wife, Pamela Combs, claims that she lost the support, consortium and services of her husband.

Elmer Hall had attended a drill sergeant's update course at the Lexington–Blue Grass Army Depot at Avon, Kentucky on March 19 and 20, 1983. Hall's orders authorized him to travel in his own vehicle, and directed him "to return to [his] permanent station upon completion of the duty," in Hazard, Kentucky. The order also directed Hall to submit a travel voucher, and he received reimbursement for his mileage.

Hall completed his training and was dismissed at approximately 3:00 p.m. on March 20, 1983. Hall went to the depot's community club where he drank several beers and then left to return to his home.

Approximately 1.7 miles north of Vancleve, Kentucky, shortly after 5:00 p.m., Hall struck the 1983 Dodge truck driven by Glenn Combs. Combs, the manager of the Jackson, Kentucky outlet of Martin's Department Store, was returning to his home in Winchester, Kentucky. Hall apparently fell asleep, allowing his vehicle to cross into the oncoming path of Combs. As a result of the collision, Combs received the extensive injuries mentioned above.

Glenn Combs brought suit against Elmer Hall in Breathitt Circuit Court. He settled with Hall and Hall's insurance carrier, Capital Enterprise Insurance, for the policy limit of $100,000.00. In a written release Glenn Combs specifically reserved any claims he might have against the United States.

On March 18, 1985, the Combses submitted administrative claims to the Lexington–Blue Grass Army Depot claims office for $381,687.69. After the government failed to respond to their claim, the Combses filed this civil complaint under the Federal Tort Claims Act.

## DISCUSSION

The United States had previously filed a motion to dismiss or for summary judgment. After the issues were briefed, the previous sitting judge of this court, Judge Scott Reed, granted the motion for summary judgment. In a Memorandum Opinion dated August 15, 1988, Judge Reed held as a matter of law that Sergeant Hall was not acting within the scope of his employment with the United States at the time of the accident, thereby relieving the United States of *respondeat superior* liability as Hall's employer. Rec. 24.

The Plaintiffs took an appeal from the Memorandum Opinion and Order and Judgment dismissing their case. Rec. 26. The United States also filed a cross-appeal from the decision of the court, rec. 27, but later moved the Court of Appeals to voluntarily

dismiss the cross-appeal, which was granted. Rec. 31. In a unanimous opinion, a panel of the Sixth Circuit Court of Appeals reversed the dismissal of Plaintiffs' case, holding that under Kentucky law a factual issue existed as to whether Hall had deviated from his route or whether he had resumed a course home that would not have been performed but for the orders he had received. 884 F.2d 578.

This court conducted an evidentiary hearing on September 4, 1990 for the purpose of addressing the factual issue raised by the Sixth Circuit in its opinion. After hearing evidence and considering the arguments of counsel, this court found that Elmer Hall was acting within the scope of his employment with the United States at the time of the accident. A transcript of the oral fact findings of the court has been prepared and filed in the record. Rec. 76. In a prehearing memorandum, the United States once again advanced the other arguments previously raised in its motion to dismiss or for summary judgment, but that had not been considered by Judge Reed or the Sixth Circuit. This court subsequently directed the parties to brief further the remaining issues.

The United States continues to advance two arguments previously raised in its motion to dismiss or for summary judgment. The United States contends that Hall was not an "employee of the government" for purposes of the Federal Tort Claims Act at the time of the accident and, secondly, that no jurisdiction exists under the Federal Driver's Act, 28 U.S.C. § 2679, due to a prior state court settlement between Plaintiffs and Elmer Hall. In his Memorandum Opinion, Judge Reed did not address these two issues; he only considered the third issue of whether Elmer Hall was acting within the scope of his employment at the time of the accident. The Sixth Circuit also did not consider the other arguments in deciding its opinion, examining only the single issue relied upon by Judge Reed in dismissing the case.

### A. Law of the Case Doctrine

■ Prior to the evidentiary hearing conducted on September 4, 1990, the Plaintiffs

filed a motion in limine contending that the law of the case doctrine bars the United States from asserting or addressing the two other arguments. The Plaintiffs note that, although Judge Reed had not directly confronted the merits of these issues in his Memorandum Opinion dismissing the case, he implicitly assumed Hall's status as an "employee" of the federal government in addressing the issue of "scope of employment," thus assuming the propriety of jurisdiction. Furthermore, Plaintiffs argued in their brief to the Sixth Circuit that the other two issues were not alternative grounds for affirming the district court dismissal. The United States also fully briefed these issues as alternative grounds for affirming the district court dismissal.

The Sixth Circuit did not discuss these other issues raised by the parties. In its opinion the Sixth Circuit merely reversed the decision of the district court as to its conclusion on Sergeant Hall's "scope of employment" under Kentucky law. The appeals court remanded the case to the district court for a factual finding resolving the scope of employment issue.

The doctrine of law of the case relates to issues of law decided at an earlier stage of the litigation. Only such issues that have actually been decided, either explicitly or by necessary inference from the disposition, constitute the law of the case. 1B J. Moore, J. Lucas & T. Currier, Moore's Fed. Prac. ¶ 0.404[1] (1988). Thus, points of law not reached and decided in the first appeal remain open on remand. *Id.* "In the case in which a mandate of the appellate court does not address a particular issue, the appellate judgment, on this issue, does not establish the law of the case...." *Id.* at ¶ 0.404[4.–3].

The court has reviewed this matter and does not find that the law of the case doctrine bars consideration of the other two issues raised by the United States in its earlier motion to dismiss. First, Judge Reed never spoke to the merits of these issues in his opinion. Judge Reed only dismissed the case based upon his conclusion that Hall was not acting within the scope of his employment with the United

States as a matter of Kentucky law at the time of the accident. Second, because Judge Reed only dismissed the case on this sole ground, the Plaintiffs could only appeal the decision to the extent that it was adverse to the Plaintiffs; they did not have a foundation for appealing any other issues since they were not used as a basis for dismissing the case in Judge Reed's order and judgment.

Furthermore, the record reflects that the United States filed a cross-appeal, presumably to bring the other two issues to the appeals court's attention. The United States may have thought that since Judge Reed failed to address the issues, he impliedly assumed their lack of merit. The United States later moved the Court of Appeals to dismiss its cross-appeal, which the court granted. Thus, the issues were never properly before the Sixth Circuit since the district court had not first considered those matters, even though the parties attempted to stimulate a discussion of the issues and to solicit direction from the Court of Appeals in their briefs. Nonetheless, the Sixth Circuit limited its appellate review to the only issue technically raised by Judge Reed's opinion dismissing the case. This court finds, therefore, that the law of the case doctrine does not foreclose consideration of these issues at this time.

### B. Hall Was An "Employee of the Government"

The United States contends that Elmer Hall was not an "employee of the government" at the time of the accident in order for Plaintiffs to invoke jurisdiction against the United States under the provisions of the Federal Tort Claims Act ["FTCA"]. The FTCA provides that parties injured by the negligent acts of federal government employees may sue the United States in certain instances. 28 U.S.C.S. §§ 2671 et seq. Jurisdiction for these claims lies exclusively in the district courts. 28 U.S.C.S. § 1346(b). The types of claims that can be brought against the United States, however, are limited by the provisions of the FTCA. The claims authorized by the FTCA, as in this case, are

for money damages ... for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C.S. § 1346(b). " 'Employee of the government' includes ... members of the military or naval forces of the United States...." 28 U.S.C.S. § 2671. The FTCA defines "acting within the scope of his office or employment" as "acting in line of duty." *Id.* Whether military personnel are acting within the "line of duty" is determined by state law of *respondeat superior* in accordance with the law of the state where the negligent act or omission occurred. *Williams v. U.S.*, 350 U.S. 857, 76 S.Ct. 100, 100 L.Ed. 761 (1955); *Mider v. U.S.*, 322 F.2d 193, 197 (6th Cir.1963).

It is undisputed in this case that Elmer Hall was a staff sergeant in the United States Army Reserve. Thus, the court finds that Hall was a "member[ ] of the military ... forces of the United States" at the time of the accident. The court would note, however, that the issue of whether Hall was acting within the scope of his employment as a reservist at the time of the accident is a separate issue, which this court has previously addressed in conformity with the direction of the Sixth Circuit.

The United States argues that Hall was not an "employee of the government" at the time of the accident, as that term is defined by federal law, nullifying any purported jurisdiction under the FTCA. The United States contends that this court's jurisdiction depends on Hall's status as a government employee, and he would have to be "on duty" in order to be considered an "employee" of the United States. In this respect, it would appear that the United States is attempting to "bootstrap" an analysis of "line of duty" status and Hall's status at the time of the accident, which are appropriately relevant to the issue of scope of employment, onto an initial deter-

mination of Hall's membership in the Army reserves.

The United States emphasizes that Hall, as a reservist, was on inactive duty training status. On March 7, 1983, Hall's unit issued temporary duty orders for Hall to attend a Drill Sergeant's Update Course at the Lexington–Blue Grass Army Depot on March 19–20, 1983. The temporary duty orders authorized Hall to travel in his privately owned vehicle. Hall was to proceed from Hazard, report to the training site of the depot no later than 9:00 a.m. on March 19th, and return to Hazard at the conclusion of the training. At approximately 3:00 p.m. on March 20th, Hall had completed his update classes with the other reservists and was dismissed. The item in his travel orders indicating return to Hazard was included only to compute Hall's travel allowance.

Thus, the United States contends, Elmer Hall was an off-duty reservist returning from inactive duty training, traveling under temporary orders in his privately owned vehicle. In its original motion to dismiss, the United States asserts that section 2671's definition of "employee of the government" is "vague." In order to define the phrase, the United States cites Hall's ineligibility for military medical benefits under 10 U.S.C. section 3721(2) as an analogy, since the Comptroller General of the Army concluded that Hall was not under military control, having completed his employment in inactive duty training at the time of the accident.

The cited statute provides for entitlement to hospital benefits for any member of the army, other than the regular army, who "is called or ordered to active duty, or to perform inactive-duty training, for any period of time, and is disabled *in line of duty from injury while so employed.*" 10 U.S.C.S. § 3721(2) (emphasis added). The Comptroller General, in his written opinion addressing Hall's request for medical benefits, stated:

> The Assistant Secretary notes that under 10 U.S.C. § 3721(2) an Army Reserve member is entitled to medical benefits

when he is called or ordered to perform inactive duty training and is disabled in line of duty "while so employed" and questions whether Sergeant Hall was performing inactive duty training while traveling in order to qualify for medical benefits....

The period that he was employed in inactive duty training was that time he was engaged in meeting the requirements of the drill sergeant update course. When he was dismissed from the particular training duty, his inactive duty training ended and he was no longer "so employed" within the meaning of 10 U.S.C. § 3721.

*Matter of: Staff Sergeant Elmer Hall, Jr., July 23, 1984*, 63 Comp.Gen. 494, 495–96. Thus, the United States reasons that since Hall was no longer "so employed" for the purposes of the medical benefits statute, he cannot be an "employee of the government" for FTCA purposes.

The court finds, however, that Hall's ineligibility for medical benefits is not relevant to this particular issue. In assessing Hall's status for the purposes of obtaining medical benefits, the issue is limited to the reach of 10 U.S.C. section 3721 and the statutory grounds for recovery of medical benefits, an issue separate from the reach of jurisdiction under the FTCA. The guidelines established by the Army to determine the medical benefits entitlement of Elmer Hall are not germane to this issue.

The statutory language of the FTCA "was drafted to have expansive reach." *Witt v. U.S.*, 462 F.2d 1261, 1263 (2nd Cir. 1972). There is no language of limitation in the Act concerning its application to employees of the government in this instance. Under the FTCA the United States is liable for damages for personal injury caused by an employee of the government while acting within the scope of his employment under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act occurred. *U.S. v. Taylor*, 236 F.2d 649, 653 (6th Cir.1956). As a member of the reserves, Hall was clearly an employee of the government, regardless of his duty status at the time of the accident or his entitlement to medical benefits. As stated earlier, whether Hall was acting within the scope of his employment, a legal limitation on vicarious liability of employers under principles of *respondeat superior*, is a separate issue decided in accordance with state law.

The United States also makes a compelling argument that a Congressional amendment to the definition of "employee of the government" to include the National Guard suggests that Hall was not an employee under the FTCA. In 1981, Congress amended section 2671 to include as an employee of the government "members of the National Guard while engaged in training or duty under section 316, 502, 503, 504, or 505 of title 32...." 28 U.S.C. § 2671. The United States points to legislative history contained within a House Report suggesting that members of Congress designed the amendment to subject National Guardsmen to the same FTCA coverage that already applied to the Armed Forces and its other reserve components. Furthermore, as the United States notes, the House Judiciary Committee cited an Army Comptroller opinion concluding that a reservist's "inactive duty training extends from the time of first muster until the end of scheduled inactive duty training for the day and does not include travel to and from home and headquarters." H.R.Rep. No. 384, 97th Cong., *reprinted in* 1981 U.S.Code Cong. & Admin.News 2692, 2695 (citing 43 Comp.Gen. 412 (1963)) [hereinafter "USCCAN"]. The Army Comptroller opinion concerned entitlement to medical benefits under 10 U.S.C. section 6148(a) which, like 10 U.S.C. section 3721(2), provides medical benefits only where the reservist is performing inactive duty training and is "disabled in line of duty from injury while so employed."

This court disagrees with the United States' interpretation. First, this court relies upon the clear language and meaning of the terms "employee of the government" and "members of the military or naval forces of the United States" set forth in section 2671 of the FTCA. Army reserv-

ists are clearly members of the military, whether engaged in training or regardless of any other designation of status. This court also finds guidance in a recent case where a district court held that "the FTCA's definition of employee for purposes of the Act does not require that a person possess formal employee status." *Duffy v. U.S.*, 1990 WL 51264, at 2 (N.D.Ill. April 11, 1990). The court further noted that reservists "clearly fall within this broad definition." *Id.*

Second, this court considers the employment related issues generated within the medical benefits context separate from the necessary employment nexus required under the FTCA. *See U.S. v. Carroll*, 369 F.2d 618, 622 (8th Cir.1966) ("the [FTCA] has consistently been construed to be broader in scope than [10 U.S.C. § 6148(a)]"). Both 10 U.S.C. section 3721(2) and section 6148(a) concern entitlement to *medical benefits* for servicemen who have been injured. Congress has chosen to limit their entitlement to these benefits to situations where they are disabled "in line of duty from injury while so employed."

This analysis differs from the language and spirit of the FTCA, which concerns vicarious liability of the United States for the negligent acts of its employees. The FTCA limits the imposition of vicarious liability for acts of government employees by resorting to application of state law principles defining the scope of employment. In the instant case, the United States is attempting to apply "line of duty" and "scope of employment" type of analysis to determine that Hall was not an "employee" at the time of the accident, since he was traveling home after completing his inactive duty training. However, this cross-application of analysis for different issues is incorrect.

For the purposes of this case, application of the FTCA only involves a two-step inquiry. The court must first find that Hall was employed by the government. Regardless of his status or duties at the time of the accident, Hall was clearly employed as a reservist, as opposed to someone not employed by the government in any capacity. However, the mere employment of an individual by the government does not in itself render the government liable for the negligent acts of the individual.

The second inquiry involves "scope of employment," and by requiring a nexus between the employment and the negligent act, it serves as a check on unlimited imposition of vicarious liability upon the United States. Thus, Hall's "employment" with the government should not be confused by the separate issues of his status and the scope of his employment at the time of the accident. It would seem anomalous to find that Elmer Hall was not an employee of the government at the time of the accident after having found as a matter of fact that Hall was acting within the scope of his employment at that time. The court considers the United States' arguments best directed to the contention that Hall was not acting within the scope of his employment, not whether Hall was an "employee of the government," at the time of the accident.

Third, Congress amended the statute in 1981 simply to include members of the National Guard within the definition of "employee of the government" under the FTCA. The purpose of the amendment was to provide the same coverage under the FTCA as exists for the other Armed Forces and its reserve components. 1981 USCCAN at 2692. In fact, members of the National Guard, except when called into federal service, are not federal employees for FTCA purposes. *Maryland ex rel. Levin v. U.S.*, 381 U.S. 41, 47–48, 85 S.Ct. 1293, 1297–98, 14 L.Ed.2d 205 (1965); 1981 USCCAN at 2692 ("[e]xcept when federalized, the Guard is under the direct order of State Governments"). As a matter of policy, the amendment to the statute merely brings such persons within the purview of the statute to the extent they are engaged in Federal training or duty. 1981 USCCAN at 2695 ("while actual command during Federal training activities is maintained by the states as a matter of law, as a matter of policy, it is appropriate that the Federal liability for damages arising out of the acts or omissions of National Guard personnel during Federal training be equivalent to

Federal liability for the acts or omissions of Air Force and Army Reserve personnel which arise out of their identical training"). This amendment and its legislative history, therefore, do not otherwise alter existing interpretations of the FTCA.

Finally, although members of the House Judiciary Committee may have quoted an Army Comptroller General opinion concerning a reservist's status before and after inactive duty training in considering issues pertaining to the National Guard, the Comptroller opinion clearly addressed issues of entitlement to medical benefits under 10 U.S.C. section 6148(a), and reliance on the opinion for any other purposes is misplaced. The view given by a House committee to the meaning of a statute and its breadth, after the statute has been passed and adopted into law, although perhaps relevant to the inquiry, is not dispositive of its meaning; this is especially true where the plain language of the statute otherwise provides a resolution.

### C. This Action is Not Barred By the Prior Settlement

The United States makes a separate argument challenging the assertion of claims in this action following settlement between the Plaintiffs and Elmer Hall in an earlier state court action. In that suit, Plaintiffs asserted tort claims against Hall individually. Hall's insurer eventually paid the $100,000 limit of Hall's personal automobile policy in settlement of Plaintiffs' claims against Hall. As a part of the settlement, Plaintiffs executed a written release of claims against Hall, specifically reserving any claims against the United States. The United States argues that the settlement and the pursuit of this action against the United States are inconsistent under the Federal Driver's Act, the Federal Employees Liability Reform and Tort Compensation Act ["FELRTCA"], and under various state law principles.

**1.** "Pursuant to § 8(b), the Liability Reform Act applies to all proceedings pending on the date of enactment." *U.S. v. Smith,* — U.S. —, — n.

### 1. The Federal Driver's Act and the FELRTCA.

■ In the Federal Driver's Act of 1961, Congress amended the remedy offered by the FTCA to create an exclusive remedy against the United States for torts committed by employees in the operation of a motor vehicle. In 1988, Congress passed the Employees Liability Reform and Tort Compensation Act, expressly superseding and repealing the Driver's Act by amending the statute to extend this exclusivity to all tort claims brought under the statute. Under the current version of the statute,[1] the FTCA remedy against the United States is made "exclusive of any other civil action or proceeding for money damages by reason of the same subject matter against the employee whose act or omission gave rise to the claim or against the estate of such employee." 28 U.S.C.S. § 2679(b)(1). The statute further provides that any other civil action or proceeding for money damages against the employee in such circumstances is "precluded without regard to when the act or omission occurred." *Id.* As the remedy is exclusive against the United States, the provision protects federal employees from personal liability for acts within the scope of their employment. *Vantrease v. U.S.,* 400 F.2d 853 (6th Cir. 1968); *Smith v. U.S.,* 328 F.Supp. 1224, 1225 (W.D.Tenn.1971). An independent cause of action would exist against an individual only if he was acting beyond the scope of his employment.

The statute sets forth a series of procedures in order to invoke exclusive jurisdiction against the United States and to bar other actions against the employee. Whenever an employee is sued in any court on account of acts or omissions of the employee that may have arisen within the scope of his employment, the employee is directed to deliver all process and copies of relevant documents to his immediate supervisor for eventual delivery to the Attorney General or his agents. *Id.* at § 2679(c). The Attorney General then reviews the matter and makes a determination whether the em-

4, 111 S.Ct. 1180, 1184 n. 4, 113 L.Ed.2d 134 (1991).

ployee was acting within the scope of his employment at the time of the incident. *Id.* at § 2679(d)(1). If the Attorney General certifies that the acts were within the employee's scope of government employment, the United States is substituted as the party defendant, and the action may be removed to federal court if it was initiated in state court. *Id.* at § 2679(d)(1) & (2). If the Attorney General refuses to certify scope of employment under the statute, the employee may seek a certification on the issue from the court. *Id.* at § 2679(d)(3).

In the instant case, the United States argues that Plaintiffs have taken inconsistent stances. For example, the FTCA provides an exclusive remedy against the United States and precludes an action against the employee individually where the employee is acting within the scope of his employment. In addition, Hall's personal insurance policy contained an exclusion for damages resulting from acts or omissions related to the operation of an automobile by an employee of the United States, if that employee was acting within the scope of his employment with the United States as determined under 28 U.S.C. section 2679. Therefore, the United States maintains that for Plaintiffs to recover against Hall individually, Plaintiffs would have to show that Hall was not acting within the scope of his employment. On the other hand, if Hall was acting within the scope of his employment, section 2679 provides an exclusive remedy against the United States. Thus, since Plaintiffs recovered a settlement against Hall in the state court action, the United States insists that no jurisdiction exists under section 2679(b) in the instant case, and to allow the current action would circumvent the purpose of the exclusivity provisions and allow Plaintiffs to seek double recovery on inconsistent theories.

The court disagrees with the United States. The Plaintiffs appear correct that the exclusivity of section 2679 is not effectuated until the Attorney General certifies that the employee was acting within the appropriate scope, or a court makes the determination, as the case may be. *Smith,* 328 F.Supp. at 1226. Sergeant Hall did not assert section 2679 as a defense in the

state court suit and did not deliver copies of the process to the Attorney General or his agents. Furthermore, neither the complaint nor the answer asserted that Hall was acting within the scope of his employment at the time of the accident. Thus, scope of employment never became an issue, the Attorney General never certified the issue, and the issue was not litigated. Since Hall did not comply with section 2679(c), exclusivity was never effectuated.

In *Brennan v. Fatata,* 78 Misc.2d 966, 359 N.Y.S.2d 91 (Sup.Ct.1974), the court noted that "[i]f the defendants are to obtain the benefits of the federal preemption of 28 U.S.C.A. § 2679, they must follow its provisions by turning their suit papers over to the United States Attorney General ... who will then certify if the defendants were within the scope of federal employment...." 359 N.Y.S.2d at 92. "It is implicit in the statute that if the defendants do not turn over their suit papers or if the Attorney General does not certify to their being in the scope of federal employment, the state action continues against the defendants personally." *Id.*

The fact that both Hall and his insurer failed to assert an available defense to the action should, in and of itself, have no prejudicial effect on the Plaintiffs in a subsequent action. Hall's insurer merely agreed to settle the case for the policy limits without litigating the issues of scope of employment and coverage under the policy. The United States essentially asks for this court to acquiesce to the insurance company's tacit determination that Sergeant Hall was not acting within the scope of his employment. The court does not agree with this argument. If anything, Plaintiffs' action in state court has benefitted the United States since any potential liability has been reduced by $100,000.00.

2. The effect of the written release under Kentucky law.

██ The next issue concerns the effect of the release. This issue, as with the scope of employment issue, is governed by state law. *Munson v. U.S.,* 380 F.2d 976, 978 (6th Cir.1967). Kentucky law looks to

the intent of the parties in executing a release:

> [A] party can have but one satisfaction for an injury resulting from a tort and the receipt of full satisfaction for it as the consideration for a release of one joint tort-feasor necessarily works a discharge of all others who may be liable for the same injury unless it appears that the releasor's claim for damages was thereby only partially satisfied and there was no intention to release other claimed wrongdoers from liability.

*Daniel v. Turner,* 320 S.W.2d 135, 138 (Ky.1959); *see Sanderson v. Hughes,* 526 S.W.2d 308, 308 (Ky.1975). The court has reviewed the release of Hall executed by the Plaintiffs. The court finds that the Plaintiffs only received partial satisfaction from Hall's insurer of their alleged claim, and under Kentucky law, they have carefully reserved any rights they may have against the United States for the balance.

3. The doctrine of equitable estoppel.

■ In its Prehearing Memorandum, the United States continues to contest the impropriety of and the inconsistency between the settlement in the state court suit and the filing of this action. However, the United States has now shifted its focus, arguing alternatively that the doctrine of equitable estoppel precludes Plaintiffs from asserting an inconsistent legal theory in this suit after accepting benefits from Hall's private insurance policy. The United States relies upon the decision in *Kaneb Services, Inc. v. FSLIC,* 650 F.2d 78 (5th Cir.1981). The court finds the case inapposite.

In *Kaneb,* a financial institution challenged orders of the FSLIC restricting dividend payments from a subsidiary institution. Kaneb Services, Inc. had sought the purchase and control of an FSLIC-insured savings and loan institution. Before Kaneb could acquire control of the savings and loan, it first had to obtain mandatory approval of the FSLIC. The FSLIC issued a conditional approval containing, *inter alia,* a dividend restriction limiting the amount of dividends that the savings and loan could pay in any fiscal year from its net income. Kaneb subsequently obtained control of the institution without challenging the conditions within the FSLIC's approval.

Kaneb later acquired control of another FSLIC-insured institution subject to the same conditional approval of the FSLIC. In neither case did Kaneb challenge the dividend restriction imposed upon the mergers by the FSLIC prior to acquiring the institutions. Kaneb later filed a request to remove the dividend restriction. Although the FSLIC modified the restriction in part, it continued to enforce the core of the restriction. Kaneb filed a petition in the court of appeals seeking review and modification of the FSLIC orders to remove the dividend restriction.

The Fifth Circuit noted the general principle of equitable estoppel:

> It is recognized that under the doctrine of equitable estoppel a party with full knowledge of the facts, which accepts the benefits of a transaction, contract, statute, regulation, or order may not subsequently take an inconsistent position to avoid the corresponding obligations or effects.

*Id.* at 81. The court examined a similar Supreme Court decision where a gas company had been estopped from subsequently challenging a merger condition imposed by the Federal Power Commission, after having completed the merger without objection to the condition. *See Fed. Power Comm. v. Colorado Interstate Gas Co.,* 348 U.S. 492, 75 S.Ct. 467, 99 L.Ed. 583 (1955). The Fifth Circuit likewise applied the doctrine of equitable estoppel to preclude Kaneb from challenging the dividend restriction imposed by the FSLIC.

This court does not consider appropriate the application of equitable estoppel in the instant case, and *Kaneb* is distinguishable. In *Kaneb,* the plaintiff had accepted a condition expressly imposed upon it by the FSLIC by completing the acquisition of the savings and loans. In neither case did the plaintiff object or otherwise challenge the conditional approvals. In the instant case, no express condition or qualification attended the Plaintiffs' actions in state court.

The parties settled the state court action without having raised, addressed or resolved the issue of scope of employment. Neither Sergeant Hall nor his insurer ever challenged liability on account of acting outside the scope of employment, and they never invoked the provisions of section 2679 by forwarding the lawsuit documents to the Attorney General. Hall's insurer made the voluntary decision to settle the case without litigating the merits of coverage or exclusions under the policy.

Furthermore, the payment made in accordance with the settlement agreement only provided partial satisfaction of the Plaintiffs' claimed damages, and the Plaintiffs specifically reserved their rights to litigate the issues of liability of the United States—there was no express acceptance by the Plaintiffs that Hall had not been acting within the scope of his employment. In addition, the voluntary payment by Hall's insurer has inured to the benefit of the United States in the event that it is held liable for damages. This court declines to apply the doctrine of equitable estoppel in this instance and finds no assistance from the decision in *Kaneb.*

4. The doctrine of election of remedies.

██ In yet its latest memorandum, the United States has again struck upon another novel legal doctrine to justify summary dismissal of this case. It now promotes application of the doctrine of election of remedies. Since the contours of the United States' liability under the FTCA are defined identically as those of any private entity, state law provides the appropriate rules of decision. Thus, if Kentucky law would preclude the bringing of this action against an employer in circumstances similar to those of the United States here, the United States can assert the Kentucky law defense. A review of the "election of remedies" doctrine in Kentucky law is necessary.

As generally defined, "the doctrine simply means that when a person has at his disposal two modes of redress, which are contradictory and inconsistent with each other, his deliberate and settled choice and pursuit of one will preclude his later choice and pursuit of the other." *Collings v. Scheen,* 415 S.W.2d 589, 591 (Ky.1967). The doctrine is not a rule of substantive law but rather is a technical rule of procedure or judicial administration. *NE Coal Co. v. Blevins,* 277 S.W.2d 45, 48 (Ky.1955); 25 Am.Jur. 2d *Election of Remedies* § 1 (1966). The rule is equitable in nature and is regarded essentially as an application of the law of estoppel. *Id.* at §§ 1, 2. The rule is considered a "harsh one" that "should not be lightly enforced" nor "unduly extended," and "it must be strictly confined within its reason and spirit." *Id.* at § 3 (footnotes omitted). The doctrine does not apply where the available remedies are consistently concurrent or cumulative. *Id.* at § 12.

The filing of a suit is considered in some jurisdictions, including Kentucky, as an act of election, *id.* at § 16; *Reynolds Metals Co. v. Liberty Nat'l Bank & Trust Co.,* 294 S.W.2d 921, 923 (Ky.1956), although a suit which is abandoned or dismissed without a pronouncement on the merits is not considered to be an election. *Joseph Goldberger Iron Co. v. Cincinnati Iron & Steel Co.,* 153 Ky. 20, 25, 154 S.W. 374 (1913); 25 Am.Jur. 2d *Election of Remedies* § 19. However, "the commencement of a suit in a court which had no jurisdiction of the subject matter has been held not to be a conclusive election." *Id.* at § 17.

The court finds in the instant occasion that the United States' reliance upon the doctrine of election of remedies as a defense is unavailing. The court does not find that Plaintiffs decisively pursued inconsistent remedies, although the effect may now appear otherwise. First, in the state court action the Plaintiffs did not allege whether Hall was acting within the scope of his employment. In fact, that issue was not relevant to the claim unless Hall had asserted the FTCA as a defense and had implicated the United States by delivering the lawsuit papers to the Attorney General; this was never pursued. In addition, to the extent that coverage under the private insurance policy depended upon acts committed outside the scope of government employment, the insurance

company never challenged its liability on the policy. The insurer could have filed an action seeking a declaratory judgment that Hall was acting within the scope of his employment with the United States at the time of the accident. In that event, a court could have resolved the issue and perhaps freed the insurer from responsibility on the policy. Instead, the insurer voluntarily, and possibly gratuitously, compensated the Plaintiffs with the limit of Hall's policy in order to bring the litigation to a conclusion. The Plaintiffs were not parties to any discussions or disputes between the insurer and the insured as to coverage under the insurance contract, nor were they privy to the decision of the insurer to pay the claim in settlement. Hall and his insurer, for their own reasons, bought their peace.

Most importantly, neither the Plaintiffs, Hall nor his insurer ever raised the issue of scope of employment in the state court suit. In refusing to apply the doctrine of election of remedies in the circumstances of this case, the court notes that the United States was not a party to nor involved in the state suit. "Although the doctrine ... has been invoked where the remedies were in fact pursued against different persons, it has been recognized that the doctrine is particularly difficult of application when the subsequent action is against a stranger to the first action." *Id.* at § 25; *see Cincinnati Iron*, 153 Ky. at 25, 154 S.W. 374 ("this action for a conversion of the machine and the suit on the note were not between the same parties").

The court further notes that the Plaintiffs did not obtain a full satisfaction in the state court action. The Plaintiffs were obviously alert to this fact since they exercised efforts to protect any rights that might exist against the United States for the balance of their claims, and the release specifically contains language reserving any rights against the United States. The court finds no inconsistency in the Plaintiff bringing this action, especially since the United States may realize a benefit from the voluntary payment by Hall's private insurer as a setoff in any judgment. The reluctance of courts to apply this doctrine to bar a remedy is obvious from a reading of the Kentucky decisions cited by the United States in its memorandum.

Therefore, in accordance with the foregoing, it is hereby ORDERED:

(1) the United States' motion to dismiss or for summary judgment, to the extent it remains viable or has been renewed, is DENIED; and

(2) the Plaintiffs' motion in limine is DENIED.