COMMONWEALTH of Kentucky LABOR CABINET, a/k/a Commonwealth of Kentucky, Environmental & Public Protection Cabinet, Department of Labor, Appellant,

v.

Linda C. MORRIS, in her capacity as Guardian and Conservator of Robert Lee Redmon, Jr.; Robert Lee Redmon, Sr., in his capacity as Administrator of the Estate of Linda S. Redmon, Deceased; Robert Lee Redmon, Sr., Individually; and Commonwealth of Kentucky Board of Claims, Appellees.

No. 2005–CA–000370–MR.

Court of Appeals of Kentucky.

Jan. 13, 2006.

Discretionary Review Denied by Supreme Court March 14, 2007.

John D. Parsons, Frankfort, KY, for Labor Cabinet.

J. Guthrie True, Frankfort, KY, for appellees.

Before BUCKINGHAM and McANULTY, Judges; PAISLEY, Senior Judge.[1]

*OPINION*

BUCKINGHAM, Judge.

The Labor Cabinet of the Commonwealth of Kentucky appeals from an order of the Franklin Circuit Court reversing and remanding a decision by the Board of

1. Senior Judge Lewis G. Paisley, sitting as Special Judge by assignment of the Chief Justice pursuant to Section 110(5)(b) of the Kentucky Constitution and KRS 21.580.

Claims dismissing the claims of Linda C. Morris and Robert Lee Redmon, Sr., against the Labor Cabinet. The general issue concerns whether Morris and Redmon may pursue their negligence claims against the Labor Cabinet in the Board of Claims despite having settled their claims against the primary tortfeasor in a civil action in the Scott Circuit Court. We conclude that the Board properly dismissed the claims of Morris and Redmon and that the Franklin Circuit Court erred in reversing that decision. Thus, we reverse.

This case involves an automobile accident allegedly caused by the negligence of Elizabeth Lancaster, an employee of the Labor Cabinet who apparently was acting within the scope of her employment at the time of the accident. Robert L. Redmon, Sr. (Robert Sr.), and Linda S. Redmon were husband and wife. They were the parents of Robert L. Redmon, Jr. (Robert Jr.), who has been mentally handicapped since childhood.

On October 23, 2002, Mrs. Redmon was driving the family pickup truck on U.S. Hwy. 460 in Scott County. Robert Sr. and Robert Jr. were also in the vehicle. Lancaster was driving behind the Redmon vehicle, returning to Frankfort after conducting OSHA inspections in northern Kentucky. Lancaster is an employee of the Labor Cabinet, and vehicular travel is part of her employment. A third vehicle followed Lancaster's car.

The accident occurred when the third vehicle pulled into the oncoming lane in an attempt to pass the Lancaster and Redmon automobiles. While the third vehicle was passing, Lancaster also pulled into the oncoming lane in an attempt to move ahead of the Redmons' truck. This action by Lancaster caused the third vehicle to leave the road to avoid colliding with Lancaster's vehicle. The operator of the third vehicle managed to return it to the roadway where it struck the Redmons' vehicle in the left front fender, causing the Redmon vehicle to leave the roadway and strike a tree. Mrs. Redmon was killed in the crash, and Robert Jr. was severely injured. Robert Sr. was also injured, but not to the extent that his wife and son were. In addition, the Redmons' truck was damaged.

As a result of the accident, the Redmons filed a civil complaint in the Scott Circuit Court on March 14, 2003. Robert Sr., in his capacity as administrator of the estate of his late wife, Linda S. Redmon, and in his individual capacity, sought damages resulting from the alleged negligence of Lancaster. Linda C. Morris, Robert Jr.'s sister, in her capacity as guardian and conservator of Robert Jr., also sought damages due to Lancaster's negligence. In addition to these three separate claims, these parties also asserted a negligence claim against the driver of the third vehicle.

Morris, on behalf of Robert Jr., and Robert Sr., on behalf of his late wife's estate, subsequently settled their claims as they related to Lancaster. Lancaster, who was insured by Indiana Insurance Company, paid Robert Sr., in his capacity as administrator of the estate of his late wife, $100,000 to settle the estate's claim. Robert Sr.'s claim against Lancaster for property damage to the truck was settled for $500. Further, Lancaster paid Morris, in her capacity as guardian and conservator of Robert Jr., $100,000 to settle his claim. The personal injury claim of Robert Sr. remained pending.

The settlements were finalized on June 30, 2003, and Robert Sr. and Morris signed releases. The release signed by Morris on behalf of Robert Jr. contained the following paragraph:

The undersigned agrees to indemnify and hold harmless Elizabeth Shannon Lancaster and Indiana Insurance Company for any subrogation claims asserted against them, which may now or hereafter be connected with the incidence and occurrence referred to hereinabove.

The undersigned does hereby reserve her right to pursue claims against the Commonwealth of Kentucky, and any such claims are not released or waived by this Release, except to the extent that any claim against the Commonwealth of Kentucky results in a claim, demand or cause of action against Elizabeth Shannon Lancaster and Indiana Insurance Company. If the undersigned pursues a claim against the Commonwealth of Kentucky, the undersigned agrees to indemnify and hold harmless Elizabeth Shannon Lancaster and Indiana Insurance Company for known damages of whatever nature which may arise out of any claim asserted by the Commonwealth of Kentucky against Elizabeth Shannon Lancaster and Indiana Insurance Company.

The release signed by Robert Sr. on behalf of his late wife's estate contained a similar provision.

After settling with Lancaster and executing releases, Morris, as guardian and conservator of Robert Jr., and Robert Sr., as administrator of the estate of his late wife, filed claims before the Board of Claims against the Labor Cabinet, alleging that Lancaster negligently caused the accident and that she was acting within the course and scope of her employment at that time. Robert Sr., individually, also filed a claim before the Board of Claims against the Labor Cabinet.[2] These three separate claims were consolidated into a single claim and were assigned to a hearing officer.

The Labor Cabinet thereafter filed a motion for summary judgment on the grounds that it was relieved of any liability in connection with the claims due to the claimants having executed releases to its employee, Lancaster. Citing *Copeland v. Humana of Kentucky, Inc.*, 769 S.W.2d 67 (Ky.App.1989), the hearing officer granted the motion, concluding that the claimants' settlements with Lancaster inured to the benefit of the employer, the Labor Cabinet, notwithstanding attempts by the claimants in their releases to reserve the right to file claims against the Labor Cabinet. The hearing officer explained that the claimants' claims against the Labor Cabinet were based on principles of vicarious liability and were not against the Labor Cabinet in a capacity as a joint tortfeasor. The Board of Claims accepted the hearing officer's recommended order and adopted it in a final order dated May 20, 2004. The claimants then petitioned the Franklin Circuit Court for review of the Board's order.

In an order entered on January 24, 2005, the circuit court reversed the hearing officer and vacated and remanded the matter for a full hearing. The court reasoned that the Labor Cabinet and Lancaster "are considered more in the nature of joint-tortfeasors where complete recovery is allowed." The court's order relied on the cases of *Williams v. Kentucky Dep't of Educ.*, 113 S.W.3d 145 (Ky.2003), and *Combs v. United States*, 768 F.Supp. 584

---

2. When Robert Sr. filed his claim with the Board of Claims, the personal injury portion of his claim against Lancaster in the circuit court apparently was still pending. Because that claim remained pending before the circuit court at the time the hearing officer entered his recommended order in this case, that portion of his claim was held in abeyance before the Board of Claims.

(E.D.Ky.1991). This appeal by the Labor Cabinet followed.

The concept of sovereign immunity in Kentucky was discussed by the Kentucky Supreme Court in *Reyes v. Hardin County,* 55 S.W.3d 337, 338–39 (Ky.2001). Section 231 of the Kentucky Constitution provides that "[t]he General Assembly may, by law, direct in what manner and in what courts suits may be brought against the Commonwealth." Under this section, "no one can sue the State without its consent, which is usually given by a joint resolution of the General Assembly." *Bach v. Bach,* 288 S.W.2d 52, 54 (Ky.1956). "[T]he most significant waiver of immunity to date was the enactment of the Board of Claims Act by the 1946 General Assembly and its substantial amendment to its present-day form by the 1950 General Assembly." *Reyes,* 55 S.W.3d at 339.

The Board of Claims has the authority "to compensate persons for damages sustained to either person or property as a proximate result of negligence on the part of the Commonwealth, any of its cabinets, departments, bureaus, or agencies, or any of its officers, agents, or employees while acting within the scope of their employment by the Commonwealth. . . ." KRS[3] 44.070(1). If a single act of negligence results in multiple claims, as it did in this case, the total award may not exceed $350,000 and no claimant may individually recover more than $200,000. KRS 44.070(5). "The Board of Claims has exclusive jurisdiction to hear claims for damages . . . against the Commonwealth, its cabinets, departments, bureaus, agencies or any of its officers, agents or employees while acting within the scope of their employment by the Commonwealth. . . ." KRS 44.072.

When the claimants filed their civil complaint against Lancaster in the Scott Circuit Court, they could not also include the Labor Cabinet as a defendant because KRS 44.072 provides that the Board of Claims has exclusive jurisdiction over those types of claims. Thus, the claimants filed their claims against Lancaster in the Scott Circuit Court and against the Labor Cabinet in the Board of Claims. In short, the claimants initiated their claims in the proper forums. *See Williams,* 113 S.W.3d at 155–56.

The first issue is whether the Board of Claims had the authority to consider the Labor Cabinet's summary judgment motion. 108 KAR[4] 1:010 governs practice and procedure before the Board of Claims. Furthermore, the Board is bound by these regulations. *See Headen v. Commonwealth,* 87 S.W.3d 250, 254 (Ky.App.2002).

Because there is no specific provision that allows for the filing or consideration of motions for summary judgment, the claimants argue that the Labor Cabinet's summary judgment motion should not have been considered by the Board. However, 108 KAR 1:010, Section 3(2)(a)1 (2003) provides that the Board or hearing officer "[s]hall give all parties opportunity to file pleadings, motions, objections, and offers of settlement[.]"

Although the types of motions that may be filed are not specified, the regulation clearly gives parties the opportunity to file motions. A summary judgment motion is, of course, a motion, and such motions are not prohibited by the regulations.

■ We conclude that the Board of Claims may consider summary judgment motions, just as civil courts do. If this were not the case, lengthy evidentiary hearings would sometimes have to be held

---

3. Kentucky Revised Statutes.

4. Kentucky Administrative Regulations.

even though the Board might summarily dismiss the claim as a matter of law at the conclusion of the presentation of evidence by the parties. Such an exercise in futility in those cases is not required by the regulations and is contrary to common sense.

The second issue is whether the hearing officer and the Board erroneously found that there were no material facts in dispute. Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, stipulations, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR [5] 56.03. The burden is on the movant to show no genuine issue of material fact remains in dispute. *See Barton v. Gas Serv. Co.*, 423 S.W.2d 902, 905 (Ky. 1968). Once the movant has met this initial burden, it becomes incumbent on the non-movant to counter with some form of evidence demonstrating the existence of a disputed issue of material fact. *See Neal v. Welker*, 426 S.W.2d 476, 479 (Ky.1968).

"The trial court must view the evidence in the light most favorable to the nonmoving party, and summary judgment should be granted only if it appears impossible that the nonmoving party will be able to produce evidence at trial warranting a judgment in his favor." *Lewis v. B & R Corp.*, 56 S.W.3d 432, 436 (Ky.App.2001), *citing Steelvest, Inc. v. Scansteel Serv. Ctr., Inc.*, 807 S.W.2d 476, 480–82 (Ky. 1991). On appeal, the issue is "whether the trial court correctly found that there were no genuine issues as to any material fact and that the moving party was entitled to judgment as a matter of law." *Scifres v. Kraft*, 916 S.W.2d 779, 781 (Ky. App.1996).

The hearing officer addressed the Redmons' claims against the Labor Cabinet as being grounded in vicarious liability rather than liability based on independent acts of negligence. In response, the claimants assert that they were waiting for a hearing before developing facts that would establish the independent negligence of the Labor Cabinet in addition to its imputed negligence by vicarious liability. However, the claimants have yet to assert specific facts supporting a theory of independent negligence. Instead, the facts referenced by the claimants support only a claim against the Labor Cabinet based on vicarious liability and not on any independent negligent act. Therefore, we conclude the hearing officer correctly determined that the claimants did not demonstrate there was a genuine issue of material fact with respect to independent liability of the Cabinet.

■ The remaining issue concerns whether the circuit court erred as a matter of law in reversing the summary judgment entered by the hearing officer and Board of Claims dismissing the claimants' claims. The hearing officer found the *Copeland* case to be on point and applied its principles to award summary judgment to the Labor Cabinet. We agree.

In the *Copeland* case, anesthesiologists administered anesthesia to the plaintiff prior to surgery at Humana Hospital Suburban. During the administration of anesthesia and prior to the beginning of surgery, the plaintiff suffered a brain injury and became severely disabled. The plaintiff reached a settlement with the anesthesiologists, and a written settlement agreement not to sue was executed, releasing the anesthesiologists and their insurer from further liability as to any claims filed by any party against them in connection

---

**5.** Kentucky Rules of Civil Procedure.

with the plaintiff's injury. The agreement also contained a clause whereby the plaintiff reserved "the right to pursue any claims they may have against any other person or entity who may be legally liable for the injury to [the plaintiff]."

The plaintiff subsequently filed a civil complaint in circuit court against the hospital, alleging the hospital's vicarious liability for the acts of the anesthesiologists and alleging acts of negligence by the hospital independent of the acts of the anesthesiologists. The hospital moved for a partial summary judgment on the claims based on vicarious liability, citing the aforementioned agreement.

This court concluded that the circuit court was correct in granting the hospital's summary judgment motion. First, the court noted the result would avoid "circuity of action." *Copeland*, 769 S.W.2d at 69. For example, if the plaintiff obtained a judgment against the hospital, the hospital could exercise its right of indemnity back against its employees, the anesthesiologists. Since the settlement agreement between the plaintiff and the anesthesiologists provided that the plaintiff would indemnify the anesthesiologists for any sums adjudged against them in connection with the plaintiff's injury, the parties would be in the same position as when they started. *Id.*

The result created through the circuity of action caused by a release was addressed by the Kentucky Supreme Court in *Crime Fighters Patrol v. Hiles*, 740 S.W.2d 936 (Ky.1987). As in this case, the victim in *Crime Fighters* entered into a release with the primary tortfeasor. The release, in addition to containing language attempting to reserve additional claims, specifically included indemnity language. *Id.* at 937.

The court in *Crime Fighters* recognized that two forms of indemnity were involved.

One is the obligation of indemnity assumed contractually (by virtue of the release), and the second is the obligation of indemnity imposed by law (based on the relationship between the primary tortfeasor and the secondary tortfeasor). *Id.* at 938.

This chain of indemnity claims results in the "circuity of action." Thus, while the victim has a claim against the secondarily negligent party, any recovery obtained from it is then passed to the primary tortfeasor, and then by contract, to the victim. As noted in *Copeland, supra,* this leaves the parties in the position they were in when they started. 769 S.W.2d at 70.

Second, this court held in the *Copeland* case that the release of the anesthesiologists from further liability "inured to the benefit of the hospital." Thus, the court noted that the release of the primary tortfeasors (the anesthesiologists) served to discharge the secondary tortfeasor (the hospital) from further responsibility since the hospital's liability was vicarious in nature and derived solely from its legal relation to the primary tortfeasor. 769 S.W.2d at 70.

The effect of a release of the primary tortfeasor on derivation claims was more recently addressed by this court in *Waddle v. Galen of Kentucky, Inc.*, 131 S.W.3d 361 (Ky.App.2004). The *Waddle* case did not contain an indemnity agreement between the injured party and the primary tortfeasor. As a result, *Waddle* was resolved solely on the second reason set out in *Copeland.* The court in *Waddle* noted that since the claim against the secondary tortfeasor was derived solely from the negligence of the primary tortfeasor, the release in favor of the primary tortfeasor inured to the benefit of the secondary tortfeasor to bar the vicarious liability claims. 131 S.W.3d at 366.

As the hearing officer noted, the *Copeland* case is on point. Here, the claimants released Lancaster (the employee/primary tortfeasor) from further liability in connection with the claims, and the claimants further agreed to indemnify Lancaster from further liability "for known damages of whatever nature which may arise out of any claim asserted by the Commonwealth of Kentucky against Elizabeth Shannon Lancaster and Indiana Insurance Company." Furthermore, similar to the facts in the *Copeland* case, the claimants herein had attempted to reserve their right to pursue claims against the Commonwealth of Kentucky/Labor Cabinet. Under the principles set out in *Crime Fighters, Copeland,* and *Waddle,* the circuit court should have affirmed the hearing officer's summary judgment order.

The circuit court rejected the hearing officer's analysis. Rather, it relied on *Williams,* 113 S.W.3d at 145, and *Combs,* 768 F.Supp. at 584. In the *Williams* case the Kentucky Supreme Court merely determined that injured parties could bring an action against a county school board and/or the Commonwealth in the Board of Claims on a theory of vicarious liability even though they had not filed a circuit court action against any or all of the negligent employees. 113 S.W.3d at 155–56.

While we do not quarrel with the court's decision in *Williams,* it does not support the circuit court's ruling. As in *Williams,* the claimants here were entitled to proceed against the Labor Cabinet in the Board of Claims. In fact, since the Labor Cabinet was a state agency, any action against it had to be filed in the Board of Claims as it was otherwise protected by the doctrine of sovereign immunity. *See* KRS 44.070(1).

Likewise, the circuit court's reliance on the *Combs* case was also misplaced. In *Combs* a motorist brought a civil action against the United States under the Federal Tort Claims Act, seeking compensation for personal injuries he sustained as a result of a collision with a vehicle driven by a member of the United States Army Reserve. The motorist had settled his personal injury claim against the reservist in a state court and sought an additional recovery in federal court against the United States.

The United States moved the court to award it summary judgment, citing the state court settlement between the plaintiff and the reservist. The federal district court denied the summary judgment motion, finding "that the Plaintiffs only received partial satisfaction from Hall's insurer of their alleged claim, and under Kentucky law, they have carefully reserved any rights they may have against the United States for the balance." 768 F.Supp. at 593. Unfortunately, the *Combs* court erroneously relied on Kentucky joint tortfeasor law and did not analyze the issue in the context of the vicarious liability claim before it. *See id.* In other words, we conclude that the portion of the *Combs* case relied upon by the circuit court herein was erroneously decided.

Finally, the circuit court states in its order that "the Cabinet's liability is grounded in a statutory waiver of immunity pursuant to KRS 44.070(1)."[6] We disagree. KRS 44.070(1) does not serve to make the state liable for a claim filed against it. Rather, it merely provides a forum for the filing of claims that would otherwise be barred by the doctrine of sovereign immunity. As the Kentucky Supreme Court stated in *Commonwealth, Corrections Cabinet v. Vester,* 956 S.W.2d 204, 206 (Ky.1997), "[t]he Board of Claims

---

**6.** The claimants also raise this argument in their brief.

Act does not create causes of action against the Commonwealth, but is only a waiver of the defense of sovereign immunity."

The claims filed against the Labor Cabinet in this case were valid claims under the Board of Claims Act. However, any defense "which would have been available if the action could have been brought in circuit court is available in an action brought in the Board of Claims." *Vester, supra.* While the claimants had a valid claim against the Labor Cabinet based on vicarious liability, the Labor Cabinet had a defense based on the *Copeland* case. In short, the circuit court erred in reversing the summary judgment awarded by the hearing officer/Board of Claims.

The order of the Franklin Circuit Court is reversed.

ALL CONCUR.