## Louisville Times Co. v. Lancaster.

(Decided February 8, 1911.)

### Appeal from Fayette Circuit Court.

1.  An agreement not to sue one of two joint tort feasors does not release the other, although the one with whom the agreement is made is the party primarily liable.

2.  Where the defendant gives in evidence a part of a conversation with his agent, the plaintiff may show all that was said in the conversation, although the statements of the agent would not otherwise be competent evidence against the defendant.

3.  A retraction signed by an agent after the transaction was closed is not evidence against the principal, although published in its paper at the plaintiff's request, and the court should tell the jury that no damages may be allowed for the publication so made of the retraction.

BENNETT H. YOUNG and KIMBALL & HUNTER for appellants.

ALLEN & DUNCAN for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE HOBSON—
Reversing.

On January 9, 1907, there was published in the Louisville Times the following communication sent to it by R. L. McClure, its regular correspondent at Lexington: "Special to the Times.

"Lexington, Ky., Jan. 9.—At a big society function here Mrs. Clara Bell Walsh, of St. Louis, lost a diamond necklace worth several thousand dollars. The loss of the necklace remained a mystery for some time, but has now been solved, and, it is said, a Pinkerton detective was instrumental in learning the details of the affair.

"The story is that the necklace was taken by a prominent young society man, who pawned portions of it to diamond brokers in several cities, and that it was on this account that the work in tracing it out was so difficult.

"Recently there was recorded upon the books of the county clerk's office here a mortgage on a house and lot, and it is said that this was done in order to secure money with which to settle for the necklace. The young society man is employed in Cincinnati."

A rumor to this effect and connecting Merritt Lancaster with the charge had been current in Lexington for some days. So when the publication appeared, one of his friends went to Cincinnati where he was and showed it to him. He then came to Lexington, and in company with three of his friends, had an interview with McClure on the following Sunday. McClure admitted sending the communication and that he referred to Lancaster. The interview at one time threatened to become violent, but towards its close, a retraction was mentioned. The next morning, Lancaster with his attorney and the same three friends, had another interview with McClure which finally resulted in McClure signing a retraction prepared by Lancaster's attorney. Lancaster then enclosed the retraction in one of McClure's envelopes as Times Cor-

respondent, marking it, "Rush this," and mailed it to the times with the following letter:

"Lexington, Ky., Jan. 22, 1907.
"Editor of Louisville Times,
          "Louisville, Ky.

"Dear Sir:—Enclosed you will find a statement from your Lexington correcpondent, R. L. McClure, in refutation in full of an article published in your paper in January 9th. Kindly do me the courtesy to publish this immediately, letting it appear in all the editions of your paper and giving it as wide publicity as the former articles were given.

"Very truly yours,
          "MERRITT P. LANCASTER."

The managing editor of the Times on getting the papers called up McClure by phone, and was assured by him that he had signed the paper, and that it was, agreed if it was published in the Times, this should end the matter, and that there would be no further trouble. On this assurance he wrote a heading to the retraction and published it in the Times as requested on January 23, 1907. The heading and retraction are in these words:

"Nothing to warrant the slightest suspicion against Mr. Lancaster. Story published from Lexington was without foundation.

"The Lexington correspondent of the Times, R. L. McClure, on January 9, 1907, sent to this paper a communication relating to the disappearance of a diamond necklace and reciting other alleged connecting circumstances, which he now confesses was untrue and wholly unauthorized.

"In the news dispatch sent the Times no name was mentioned in connection with the accusation, but in a signed statement received today from the aforesaid McClure he confesses that at the time he wrote the articles, he had in mind the name of Merritt Lancaster. Mr. McClure further confesses that he was guilty of a great wrong to an innocent gentleman, and requests the publication of his communication. Unquestionably Mr. Lancaster is entitled to the full benefit of this public disclaimer, which appears herewith:

"On the 9th day of January, as the correspondent of the Louisville Times and other papers, I sent to those papers a story, which was published in The Times on that afternoon in the 4 o'clock and the 6 o'clock editions,

in which it was stated that Mrs. Clara Bell Walsh, of St. Louis, at a society function, had lost a diamond necklace worth several thousand dollars, that a Pinkerton detective had ferreted out the matter, and that the necklace was said to have been taken by a prominent young society man, who pawned portions of it to diamond brokers in several cities; and I further stated in the same article that there had been recently recorded in the county clerk's office a mortgage for the purpose of raising money on behalf of the young man to settle for the necklace, and that this young society man was employed in Cincinnati. I referred in that article to Mr. Merritt Lancaster, and it was so intended by me at the time it was published.

"I desire now to state that the story in every detail was without any foundation in fact; that it was published by me without verification, or attempted verification of the facts, and was the statement of an idle gossip, for which there was no foundation of any kind or character, and I desire now publicly to state that there is no single fact upon which even a suspicion of wrong can be raised against Mr. Lancaster. I have examined into the facts, and I find that Mrs. Walsh did not lose a necklace at a society function. Mr. Lancaster was not present at any such function. Mr. Lancaster had no connection of any kind or character with any loss of any diamond necklace, and the insinuation made by me in regard to him was unauthorized and entirely baseless and without foundation. The statement made by me in the article, I realize, was a reckless publication of an idle gossip, with no fact upon which to base it, and was calculated to do great injury to the young man.

"I desire to make this retraction as public as the former insinuation was made. A cruel wrong has been done to Mr. Lancaster, and this public statement is made for the purpose of repairing that wrong as far as I can do it. I admit that I should not have given currency to such false and idle gossip, and I desire the public to know that it was done carelessly and recklessly without the proper investigation of the facts and without any real knowledge on my part in regard to the matter.

"I admit further that after it was shown to me upon authoritative evidence upon the same day and before the publication appeared that I was wrong in regard to the insinuation against Mr. Lancaster, I made no effort to stop the publication, either by wire or telephone, and

realize now that if I had it could have been stopped before it was published..

"R. L. McClure,
"Times Correspondent."

On February 26, 1907, Merritt Lancaster brought this suit against the Times Company to recover damage in the sum of $25,000 for the publication of the article of January 9th. On a trial of the case, judgment was rendered in his favor for $5,000. The Times Company appeals.

The defendant pleaded that it had published the retraction as requested, and that it was agreed with the plaintiff that if this publication was made, it should be a full and complete settlement of the matter. The proof is clear that McClure so informed the editor of the Times, and that the Times published the retraction upon this understanding, but it had no communication with Lancaster. Its only communication was with McClure. McClure testified that Lancaster wanted to go on back to his work in Cincinnati and they said for him to sign the paper and this would end it all, be the end of it; that he signed it on the assurance that this would set the matter at rest. On the other hand, the witnesses for the plaintiff testified that McClure asked if any action would be taken against the newspaper in case he signed the statement; that he was told, that was a matter to be decided upon later; that if he signed the statement no action would be taken against him, and Lancaster would close the incident so far as he was concerned. The court submitted to the jury the question whether it was agreed that the retraction was accepted by the plaintiff as a satisfaction of the plaintiff's claim against the newspaper, or whether Lancaster in consideration of the paper being signed by McClure waived his right to any cause of action against the newspaper. The finding of the jury is in effect a finding that the agreement was as stated by the witnesses for the plaintiff and not as stated by McClure. But it is insisted for the defendant that McClure was the real wrongdoer, as he sent the article to the paper, and it was published in the paper by the defendant innocently relying upon the trustworthiness of McClure as its correspondent. It is insisted for the defendant that if it is responsible to Lancaster, McClure will be responsible to it for what it may have to pay Lancaster; and so if it is held liable, the agreement of Lancaster with McClure will be broken, and his signing the

retraction will not be the end of the transaction as to him as it was agreed it should be. But the plaintiff's evidence shows that McClure asked if this would protect the newspaper, and he was told that whether Lancaster would sue the newspaper was a matter to be decided later. In view of this statement, what was said to McClure amounted only to an agreement not to sue him. The rule is that a covenant not to sue one of two joint wrongdoers does not release and will not bar an action against the other. (Williamson v. McGinnis, 11 B. Mon., 74; Snow v. Chandler, 34 Am. Dec., 140; Bloss v. Plymale, 100 Am. Dec., 752; Ellis v. Esson, 36 Am. Rep., 830; Chicago v. Babcock, 143 Ill., 358; Chamberlain v. Murphy, 41 Vt., 110.) The agreement not to sue McClure does not therefore preclude Lancaster from maintaining the suit against the Times Company.

It is insisted for the defendant that the circuit court erred in allowing the plaintiff and his witnesses to testify to what McClure said in the interview which they had with him, as this was after the wrong had been done, and McClure in making these statements was in no sense the defendant's agent. But the defendant had given in evidence the paper signed by McClure, and had introduced McClure as its witness, and had proved by him under what circumstances the paper was signed, and what was the agreement in regard to it. In doing this it went fully into what was said in these interviews. When these matters were thus brought into the case by the defendant, the plaintiff had a right to show what was in fact said in these conversations. The defendant having introduced the evidence as to a part of what was said, the plaintiff had a right to show the entire conversation. McClure's evidence went to show that certain statements in the retraction were untrue, and that he signed the paper so declaring. The plaintiff's evidence went to show that McClure admitted everything to be true as stated in the paper. The plaintiff was not allowed to go into any other statements by McClure, than those made in the interviews as to which he testified as a witness for the defendant. We do not therefore see that there was any error in the admission of this evidence.

The defendant asked the court to instruct the jury as follows:

"8. The court instructs the jury that in rendering a verdict herein the jury can not consider the paper signed

by McClure and published January 23, 1907, or any statements contained therein as substantive proof of any fact stated therein against the defendant.

"9. The court instructs the jury that when the plaintiff transmitted to the defendant the signed statement of R. L. McClure published in the Times of January 23, and which was published at the request of the plaintiff, that plaintiff assumed all responsibility for the publication of said article, and if the jury should render a verdict for plaintiff herein, they must exclude from their consideration in rendering said verdict any damage which may have arisen from a publication of the matters set out in said signed statement."

The court should have given the instructions quoted. The paper of January 23d was the act of McClure, and while the statements in that paper were competent as evidence to contradict the testimony of McClure, they were not substantive proof against the defendant; for the admissions of McClure after the transaction was over, are not evidence against his principal.

It was admitted herein that the article of January 9th was without foundation; that the brooch was not lost; that Lancaster was not present at the party; that there was no ground of suspicion against him and that he was a man of high character.

A large part of the proof on the trial related to the retraction of January 23d. Until that paper was published, Lancaster's name had not been stated in connection with the matter, and few who read the previous article in the paper would know who was meant by reading the publication of January 9th. The publication of January 23d added much to the damage which Lancaster sustained by reason of the original publication; but as this publication was made at his request, the Times Company should not be made to pay damages for what he suffered by reason of this publication. In view of the great prominence given this paper on the trial and all the circumstances, we conclude that the defendant's substantial rights were prejudiced by the failure of the circuit court to give the two instructions indicated.

Judgment reversed and cause remanded for a new trial.