Lonny A. COPELAND and Mary E. Copeland, Individually and as parents, natural guardians and next friends of Laura Michele Copeland, an unmarried infant, Appellants,

v.

HUMANA OF KENTUCKY, INC., d/b/a Humana Hospital Suburban, Appellee.

No. 87–CA–002192–MR.

Court of Appeals of Kentucky.

Jan. 27, 1989.

Case Ordered Published by Court of Appeals March 17, 1989.

Discretionary Review Denied by Supreme Court May 31, 1989.

Bixler W. Howland, Louisville, Gary K. Kemper, Jenner & Kemper, Madison, Ind., for appellants.

Frank P. Doheny, Jr., Grace M. Giesel, Woodward, Hobson & Fulton, Louisville, John T. Ballantine, Ogden, Robertson & Marshall, Louisville, for appellee.

Before COMBS,* DYCHE and GUDGEL, JJ.

DYCHE, Judge.

Laura Michele Copeland, daughter of Lonny A. Copeland and Mary E. Copeland, was scheduled to have corrective surgery on her right eye on January 20, 1983, at Humana Hospital Suburban (hospital). On that day she was administered anesthesia at the hospital by certain anesthesiologists employed by Schafer and Nash, P.S.C. During this administration of anesthesia, and prior to the beginning of surgery, Laura apparently suffered a brain injury and is now severely disabled.

The Copelands (Lonny and Mary), on their own behalf and on behalf of the infant Laura, executed a document on December 20, 1983 which, in exchange for payments not disclosed to this court, agreed, in part, as follows:

> ... not to sue Drs. Schafer and Nash, P.S.C., Dr. Jerry A. Phelps, Dr. Lolita S. Weakley, or Dr. Cecilia M. Anzures, their heirs, executors, administrators, successors or assigns, and Aetna Casualty and Surety Company, its heirs, executors, administrators, successors or assigns, or make any further claim or demand, whether in tort, contract, or for statutory remedy, for injury or death of Laura Michele Copeland arising out of or in any way relating to any services or medical treatment rendered Laura Michele Copeland by any of the doctors named above. Mary E. Copeland and Lonny A. Copeland, individually and as guardians of Laura Michele Copeland, hereby specifically reserve the right to pursue any claims they may have against any other person or entity who may be legally liable for the injury to Laura Michele Copeland.

> It is the intent and purpose of the parties to this Covenant that neither Aetna Casualty and Surety Company, its heirs, executors, administrators, successors and assigns, nor Drs. Schafer and Nash, P.S.C., Dr. Jerry A. Phelps, Dr. Lolita S. Weakley, or Dr. Cecilia M. Anzures, their heirs, executors, administrators, successors and assigns, will ever have to pay out any further sums to any person or entity by reason of injury or death sustained by Laura Michele Copeland.

> This is a compromise of a disputed claim of liability and is made with the understanding that neither Aetna Casualty and Surety Company, its heirs, executors, administrators, successors and assigns, nor Drs. Schafer and Nash, P.S.C., Dr. Jerry A. Phelps, Dr. Lolita S. Weakley, or Dr. Cecilia M. Anzures, their heirs, executors, administrators, successors and assigns, admit any liability by reason hereof.

The Copelands subsequently filed an action against the surgeon and the hospital seeking damages to compensate for Laura's injuries. The cause of action against the hospital stated two grounds: 1) the vicarious liability of the hospital for the acts of its ostensible agents (the anesthesiologists); and 2) acts of negligence independent of the acts of the anesthesiologists.

On September 8, 1987, the Jefferson Circuit Court granted the hospital's motion for a partial summary judgment on the claims based on vicarious liability, citing the above

---

* This decision was reached and this opinion concurred in prior to Judge Combs' resignation from this Court to accept election to the Kentucky Supreme Court.

quoted document as reason therefor. The Copelands now appeal.

■ Appellants first argue that "the covenant not to sue the anesthesiologists does not constitute a release or inure to the benefit of the hospital," citing *Louisville Times Company v. Lancaster*, 142 Ky. 122, 133 S.W. 1155 (1911) as authority. The Copelands argue that the relative positions of the parties are the same in the present controversy as in the *Louisville Times* case, which states, "The rule is that a covenant not to sue one of two joint wrongdoers does not release and will not bar an action against the other." 142 Ky. at 127, 133 S.W. at 1157. (citations omitted.)

We agree with the principle; in this case, and for this particular part of this case, however, the hospital and the anesthesiologists are *not* joint tort feasors. *Daniel v. Patrick*, Ky., 333 S.W.2d 504 (1960).

It is clear that the hospital has vicarious liability for the acts of its ostensible agents, the anesthesiologists. *Williams v. St. Claire Medical Center*, Ky.App., 657 S.W.2d 590 (1983). This doctrine does not, however, create a "separate and distinct" duty on the hospital as appellants assert. The sole duty imposed on the hospital by this ostensible agency is "through its employees and staff, including independent staff personnel, to exercise appropriate care to provide for the patient's well-being and to promote his cure." *Ibid.* at 597. And, despite appellants' assertions to the contrary,

> There is no basic or fundamental distinction to be drawn between the liability of a master for the tortious act of his servant and a principal for the tortious act of his agent. In both cases, the liability is grounded upon the maxim of respondeat superior.

*Wolford v. Scott Nickels Bus Co.*, Ky., 257 S.W.2d 594, 595 (1953).

Having agreed not to sue the servant/agent, and made recovery by settlement therefrom, the appellant may not now seek additional recovery from the master/principal based upon the same acts of alleged negligence, whether the document is called a "release" or "covenant not to sue."

■ It matters little how the servant was released from liability; as long as he is free from harm, it appears to us that his master should also be blameless. *Max v. Spaeth*, 349 S.W.2d 1 (Mo.1961).

This result is required for either or both of two reasons: "That such a result will avoid circuity of action or that since the liability of the master or principal is merely derivative and secondary, exoneration of the servant removes the foundation upon which to impute negligence to the master or principal." *Holcomb v. Flavin*, 34 Ill.2d 558, 216 N.E.2d 811, 814 (1966).

Although the appellants have argued, both orally and in their brief, that we should not even reach the indemnification/circuity of litigation argument, we cannot close our eyes to the legal ramifications of our decision today, especially considering the dearth of Kentucky law on the subject.

■ We agree with the following analysis of the issue:

> In *Stewart v. Craig*, 208 Tenn. 212, 344 S.W.2d 761, [(1961)] the court in a similar situation involving a covenant not to sue the servant pointed out that if a judgment were obtained against the employer based upon the employee's negligence, the employer would be entitled to sue the employee and obtain the same judgment against him. Since the plaintiff had given the employee the covenant not to sue, the employee would be then entitled to judgment against the plaintiff as was originally obtained in the action against the employee, thus completing the circuit and the parties would come out in the same position as when they started. The court, therefore, held that a covenant not to sue the servant extinguishes the cause of action against the wrongdoer and therefore extinguishes the cause of action against his superior.

*Holcomb v. Flavin, supra* at 814. The covenant in the present case would bring about the same circuity if we reversed the partial summary judgment.

As far as the vicarious liability issue, we find that other courts have spoken to this issue with persuasive reasoning which we paraphrse and adopt. The covenant not to sue not only operated to discharge the anesthesiologists, Schafer and Nash, P.S.C. (the servants/employees) as the parties primarily responsible, it affected a complete discharge of the hospital (the master/employer) who is only secondarily liable, despite the attempted reservation by the Copelands in the covenant of all their rights against the hospital. The Copelands had but one cause of action which the law gave to compensate them for their daughter's injuries. This cause of action for the allegedly tortious conduct of Schafer and Nash was assertable against the hospital only because Schafer and Nash were allegedly acting in their function as employees or ostensible agents of the hospital at the time they committed the negligent act causing Laura Michele Copeland's injury. When Schafer and Nash entered into the structured settlement agreement with the Copelands, they repaired the wrong that they had done and therefore were fully acquitted from further liability. This acquittance inured to the benefit of the hospital, for the discharge of the primary tortfeasor (Schaefer and Nash) must be held to discharge the secondary tortfeasor (the hospital) also from further responsibility, as the hospital's liability for the tortious act was vicarious in nature and derived solely from its legal relation to the wrongdoer, Schafer and Nash.

This is sound public policy, and supported by other decisions from our sister states. *See Craven v. Lawson*, 534 S.W.2d 653 (Tenn.1976); *Glover v. Tacoma General Hospital*, 98 Wash.2d 708, 658 P.2d 1230 (1983); *Dickey v. Estate of Meier*, 188 Neb. 420, 197 N.W.2d 385 (1972); *Mid–Continent Pipeline Co. v. Crauthers*, Okla., 267 P.2d 568 (1954); *Holmstead v. Abbott G.M. Diesel, Inc.*, 27 Utah 2d 109, 493 P.2d 625 (1972). *See also Annotation, Release of (Or Covenant Not to Sue) Master or Principal as Affecting Liability of Servant or Agent for Tort or Vice Versa*, 92 A.L.R.2d 533 (1963).

The judgment of the Jefferson Circuit Court is affirmed.

GUDGEL, J., concurs.

COMBS, J., dissents.

COMBS, Judge, dissenting.

I respectfully dissent from the majority and would reverse and remand for trial. This case is similar in many respects to the case of *Williams v. St. Claire Medical Center*, Ky.App., 657 S.W.2d 590 (1983) and *Paintsville Hospital Company v. Rose*, Ky., 683 S.W.2d 255 (1985). The document executed by appellants was a covenant not to sue and was not a release as characterized by the majority, and did not inure to the benefit of the appellee.