Gerold Scott WADDLE;  and Gilda
Ditmer, Appellants,

v.

GALEN OF KENTUCKY, INC.,
d/b/a Humana Hospital Lake
Cumberland, Inc., Appellee.

No. 2002–CA–002085–MR.

Court of Appeals of Kentucky.

March 19, 2004.

Thomas E. Carroll, Monticello, KY, for appellant.

B. Todd Thompson, Louisville, KY, for appellee.

Before BUCKINGHAM, DYCHE and JOHNSON, Judges.

## OPINION

JOHNSON, Judge.

Gerold Scott Waddle and Gilda Ditmer have appealed from an order entered by the Pulaski Circuit Court on September 17, 2002, which dismissed their vicarious liability claim against the appellee, Galen of Kentucky, Inc., d/b/a, Humana Hospital Lake Cumberland, Inc. (Cumberland), with prejudice. Having concluded that the trial court did not err by dismissing the appellants' cause of action against Cumberland, we affirm.

At approximately 5:45 p.m. on June 1, 1992, Waddle was injured in a motorcycle accident in Casey County, Kentucky. Shortly thereafter, Waddle was taken to the emergency room at Cumberland for treatment.[1] Waddle was initially attended to by Dr. Elias Deetlefs, the emergency room physician on duty. Dr. Deetlefs noticed that Waddle's left leg appeared to be seriously injured. Consequently, he called Dr. Donald Brown, one of the general surgeons on staff at Cumberland, for a surgical consultation. Both doctors agreed that

Waddle suffered from compartment syndrome, a condition which results when swelling or other causes of pressure prevent blood from reaching a particular muscle compartment. Dr. Brown decided to transfer Waddle to the University of Kentucky Medical Center (UKMC) for a fasciotomy, the standard operative procedure used to treat compartment syndrome. A transport was called at 8:55 p.m., and Waddle arrived at UKMC at approximately 11:10 p.m. Waddle was taken into surgery at 1:30 a.m. on June 2, 1992. Waddle has had four additional surgeries performed since the initial fasciotomy.

On June 1, 1993, Waddle filed a complaint in the Pulaski Circuit Court against Dr. Brown and Cumberland, in which he alleged, *inter alia*, that Dr. Brown negligently delayed his treatment thereby necessitating additional procedures which resulted in permanent disfigurement, impairment of his earning power, pain and suffering, and excess medical expenses.[2] Waddle contended that the fasciotomy should have been performed at Cumberland as opposed to UKMC and that the delay in treatment resulted in the death and deterioration of certain muscle tissue in his leg. Waddle's mother, Ditmer, joined in the complaint, alleging damages for lost wages as well as for nursing services that she provided for her son.

Waddle's expert witness, Dr. Luther Cobb, testified at trial that the delays Waddle was subjected to at Cumberland were a substantial factor in bringing about his ultimate injuries and in necessitating further operational procedures. Dr. Cobb explained that time is of the essence when performing a fasciotomy due to the possibility of irreversible muscle tissue loss. Dr. Cobb opined that Dr. Brown's decision

---

1. Cumberland is located in Somerset, Kentucky.

2. Waddle also named Dr. Deetlefs as a defendant in the complaint.

to transport Waddle to UKMC rather than to perform the fasciotomy at Cumberland was a breach of the standard of care.

Nevertheless, the trial court granted Dr. Brown's motion for a directed verdict. The court concluded that the appellants had failed to produce "sufficient evidence upon which a reasonable person could determine that a fasciotomy would not have been necessary but for the Defendants' alleged negligence, that the resultant sequela of Waddle's injuries would have been any different but for the Defendants' alleged negligence, or that the Defendants' alleged negligence was otherwise a substantial contributing factor in causing the injuries" sustained by Waddle. The trial court also granted Cumberland's motion for a directed verdict. The trial court reasoned that the appellants had failed to produce sufficient evidence indicating the hospital was independently negligent.[3]

On October 8, 1999, this Court rendered an unpublished opinion reversing the trial court's decision with respect to Dr. Brown and Cumberland.[4] This Court concluded that there "was adequate evidence that [Dr. Brown's] decision to transfer Waddle constituted a breach of the standard of care." With respect to Cumberland, this Court agreed with the trial court's finding of "no independent negligence on the part of Cumberland." Notwithstanding, this Court concluded that "Cumberland may be subject to liability under the doctrine of ostensible agency."[5] Consequently, the case was remanded to the Pulaski Circuit Court for a new trial with respect to Dr. Brown and Cumberland.[6]

In September 2002 the appellants voluntarily dismissed their claim against Dr. Brown,[7] but they did not enter into a written settlement agreement. However, the appellants did indicate that they intended to proceed against Cumberland under an ostensible agency theory. After learning of the dismissal of Dr. Brown, Cumberland filed a motion to dismiss on September 17, 2002. In sum, Cumberland contended the appellants had released the hospital of its liability by agreeing to voluntarily dismiss their claim against Dr. Brown, the hospital's alleged ostensible agent.[8] On September 17, 2002, the trial court entered an order dismissing the appellants' claim against Cumberland, with prejudice. This appeal followed.

The appellants' argument that the trial court erred by dismissing their claim

---

3. The trial court also entered a directed verdict in favor of Dr. Deetlefs.

4. This Court affirmed the trial court's decision with respect to Dr. Deetlefs. *See Waddle v. Galen of Kentucky*, 1998–CA–000178–MR & 1998–CA–000466–MR (not-to-be published opinion).

5. For a thorough discussion of the doctrine of ostensible agency *see Williams v. St. Claire Medical Center*, Ky.App., 657 S.W.2d 590, 595–97 (1983).

6. The Supreme Court of Kentucky entered an order denying discretionary review in the case on September 25, 2000.

7. The trial court entered an order dismissing Dr. Brown as a defendant on September 16, 2002. It appears the voluntary dismissal was the product of an agreement on the part of Dr. Brown's insurance carrier to pay Waddle approximately $9,900.00 as reimbursement for his "costs".

8. Cumberland attached an affidavit to its motion to dismiss in which one of its attorneys, Todd B. Thompson, stated that the appellants' counsel, Tom Carroll, had informed him that "Dr. Brown paid money to [Waddle] . . . as a payment of 'costs' associated with the litigation." In his affidavit, Thompson further stated that Carroll had informed him that the appellants "intended to proceed solely against the Hospital based upon a theory of vicarious liability[,]" and that Dr. Brown had not been given a " 'release' ".

against Cumberland is two-fold. First, the appellants contend that they never released Dr. Brown. Second, the appellants argue in the alternative that a "release" of a defendant who is primarily liable for a particular plaintiff's injuries does not necessarily operate as a "release" of the defendant's ostensible principal. We reject both contentions.

■ We begin our analysis by setting forth the proper standard of review. Since the trial court apparently considered matters outside of the pleadings, *i.e.,* Thompson's affidavit, in arriving at its decision to dismiss the appellants' claim against Cumberland, we must treat the motion as one for summary judgment.[9] The standard of review governing an appeal of a summary judgment is well-settled. The appellate court must determine whether the trial court erred by concluding that there was no genuine issue as to any material fact and that the moving party was entitled to a judgment as a matter of law.[10] Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, stipulations, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter

of law."[11] In *Paintsville Hospital Co. v. Rose,*[12] our Supreme Court held that for summary judgment to be proper the movant must demonstrate that the adverse party cannot prevail under any circumstances. The Court has also stated that "the proper function of summary judgment is to terminate litigation when, as a matter of law, it appears that it would be impossible for the respondent to produce evidence at the trial warranting a judgment in his favor."[13] The appellate court need not defer to the trial court since factual findings are not at issue.[14] "The record must be viewed in a light most favorable to the party opposing the motion for summary judgment and all doubts are to be resolved in his favor."[15] Furthermore, "a party opposing a properly supported summary judgment motion cannot defeat it without presenting at least some affirmative evidence showing that there is a genuine issue of material fact for trial."[16]

■ " 'A release is a private agreement amongst parties which gives up or abandons a claim or right to the person against whom the claim exists or the right is to be enforced or exercised.' "[17] That is to say, a release is a surrender of a claimant's right to prosecute a cause of action.[18] In Kentucky, a release is viewed as a

9. *See, e.g., Pearce v. Courier–Journal,* Ky.App., 683 S.W.2d 633, 635 (1985). *See also* 6 Philipps, *Kentucky Practice,* Kentucky Rules of Civil Procedure (CR) 12.02, cmt. 9 (5th ed.1995). "On a motion to dismiss ... the Rule recognizes that matters outside the pleadings may be presented by affidavit or otherwise. It is within the discretion of the court whether or not this extraneous matter shall be considered, but if the court does not exclude it, the motion shall be treated as one for summary judgment under Rule 56."

10. *Scifres v. Kraft,* Ky.App., 916 S.W.2d 779, 781 (1996).

11. CR 56.03.

12. Ky., 683 S.W.2d 255, 256 (1985).

13. *Steelvest, Inc. v. Scansteel Service Center, Inc.,* Ky., 807 S.W.2d 476, 480 (1991).

14. *Goldsmith v. Allied Building Components, Inc.,* Ky., 833 S.W.2d 378, 381 (1992).

15. *Steelvest,* 807 S.W.2d at 480.

16. *Id.* at 482. *See also Kentucky Practice,* CR 56.03, cmt. 4.

17. *Frear v. P.T.A Industries Inc.,* Ky., 103 S.W.3d 99, 107 (2003) (quoting 66 Am.Jur.2d, *Release,* § 1 (2001)).

18. *Frear, supra* at 107.

contract between the party executing the release and the party being released.[19]  A contract, in the absence of a statutory requirement, need not be in writing.[20]  As with any valid contract, however, a release must be supported by valuable consideration.[21]  It is undisputed that the appellants in the case *sub judice* entered into an oral agreement with Dr. Brown's insurance carrier whereby they agreed to voluntarily dismiss their claim against Dr. Brown in exchange for $9,900.00.  This agreement was clearly supported by valuable consideration.[22]  Thus, we are persuaded that the appellants entered into a valid and enforceable release with respect to Dr. Brown.

■ We now turn to the question of whether a valid release of an agent for the agent's alleged tortious conduct operates to bar recovery against the principal on a theory of vicarious liability.[23]  In *Copeland v. Humana of Kentucky, Inc.*,[24] this Court was presented with an analogous situation.  The plaintiff, Laura Michele Copeland, was scheduled to have corrective eye surgery at Humana Hospital Suburban.  Prior to her operation, anesthesiologists employed by Schafer and Nash, P.S.C. prepped Laura for surgery.  During the administration of her anesthesia, Laura apparently suffered a brain injury which rendered her severely disabled.  Subsequent to Laura's injury, her parents (as Laura's guardians) entered into a settlement agreement which provided in pertinent part that Schafer and Nash, its insurer, and the anesthesiol-

ogists who administered Laura's anesthesia would never "have to pay out any further sums to any person or entity by reason of injury or death sustained by Laura. . . ."[25]

Shortly after the execution of this settlement agreement, the Copelands filed suit against Humana and the surgeon who performed Laura's operation.  The trial court dismissed the Copelands' claim against Humana which had been based on a vicarious liability theory.  On appeal to this Court, the trial court's dismissal was affirmed for two reasons.  First, this Court noted that if the Copelands were permitted to recover against Humana based upon a vicarious liability theory, a problem would arise with respect to "circuity of action" under the terms of the settlement agreement, *i.e.*, Humana would be able to pursue a recovery against its agents, Schafer and Nash, and pursuant to the settlement agreement, Schafer and Nash could seek indemnification from the Copelands.[26]  Thus, vis-à-vis the Copelands's claim against Humana, all of the parties would end up in the same position as they had been prior to the Copelands's filing suit.

■ As a second basis for its holding in *Copeland,* this Court relied on the basic principle that a release of an agent from liability also releases the principal insofar as the principal's liability is derived solely from the agent's negligence:

19.  *Richardson v. Eastland, Inc.*, Ky., 660 S.W.2d 7, 8 (1983).

20.  *Skaggs v. Wood Mosaic Corp.*, Ky., 428 S.W.2d 617, 619 (1968).

21.  *Brown v. Kentucky Lottery Corp.*, Ky.App., 891 S.W.2d 90, 92 (1995).

22.  *Cf., Beech v. Deere & Co.*, Ky.App., 614 S.W.2d 254, 257 (1981).

23.  The law is well-settled that a hospital can be held vicariously liable for the negligent acts of its ostensible agents.  *See Williams,* 657 S.W.2d at 595–97.

24.  Ky.App., 769 S.W.2d 67 (1989).

25.  *Id.* at 68.

26.  *Id.* at 69.

As far as the vicarious liability issue, we find that other courts have spoken to this issue with persuasive reasoning which we paraphr[a]se and adopt. The covenant not to sue not only operated to discharge the anesthesiologists, Schafer and Nash, P.S.C. (the servants/employees) as the parties primarily responsible, it [e]ffected a complete discharge of the hospital (the master/employer) who is only secondarily liable, despite the attempted reservation by the Copelands in the covenant of all their rights against the hospital. The Copelands had but one cause of action which the law gave to compensate them for their daughters injuries. This cause of action for the allegedly tortious conduct of Schafer and Nash was assertable against the hospital only because Schafer and Nash were allegedly acting in their function as employees or ostensible agents of the hospital at the time they committed the negligent act causing Laura Michele Copeland's injury. When Schafer and Nash entered into the structured settlement agreement with the Copelands, they repaired the wrong that they had done and therefore were fully acquitted from further liability. This acquittance inured to the benefit of the hospital, for the discharge of the primary tortfeasor (Schaefer and Nash) must be held to discharge the secondary tortfeasor (the hospital) also from further responsibility, as the hospitals liability for the tortious act was vicarious in nature and derived solely from its legal relation to the wrongdoer, Schafer and Nash.[27]

██ In the case *sub judice,* while there is no apparent problem with circuity of litigation with respect to the release agreement at issue, the language quoted above applies with equal force. As we mentioned previously, the appellants entered into an agreement with Dr. Brown to voluntarily dismiss their claim against him in exchange for $9,900.00. Thus, since the alleged primary tortfeasor, Dr. Brown, was discharged from further liability, the alleged secondary tortfeasor, Cumberland, must also be deemed to be released from further responsibility. The appellants vicarious liability claim against Cumberland was derived solely from the alleged negligence of Dr. Brown. Accordingly, the release executed in favor of Dr. Brown inured to the benefit of Cumberland to bar the appellants vicarious liability claim.

In their brief to this Court, the appellants argue that *Copeland* does not control and that pursuant to our Supreme Courts decision in *Cohen v. Alliant Enterprises, Inc.,*[28] their vicarious liability claim against Cumberland should be allowed to go forward. We disagree.

In *Cohen,* the sole issue before the Court was whether an urgent treatment facility (principal) could be held vicariously liable for the alleged negligence of one of the treatment facility physicians (agent), where the physician-agent ha[d] escaped liability by virtue of the statute of limitations.[29] The Supreme Court answered this question in the affirmative:

The case at bar is clearly distinguishable from *Copeland,* in that there has been no settlement of any sort here. The Copelands were able to recover for the negligence of the anesthesiologist/agent via the release or covenant not to sue and therefore, the vicarious liability of the hospital for the negligent actions of its agent could not serve as a second recovery for the same offending conduct. The fact that Mr. Cohen can-

27. *Id.* at 70.

28. Ky., 60 S.W.3d 536 (2001).

29. *Id.* at 537.

not recover from the [physician]-agent here does not negate the fact that liability may exist, and that it can be imputed to the principal. It is the negligence of the servant that is imputed to the master, not the liability.[30]

Hence, the key distinction between *Copeland* and *Cohen* is that in the former, the agents alleged negligence was discharged via the settlement agreement, whereas in the latter, the claim against the agent was simply barred by the statute of limitations. In other words, since the physician-agents alleged negligence in *Cohen* had not been discharged, the urgent treatment facility as principal was subject to suit based upon a theory of vicarious liability.

Under the facts of the instant case, *Copeland* clearly controls. Dr. Browns alleged negligence was discharged in exchange for the payment of $9,900.00. Thus, no negligence could thereafter be imputed to Cumberland. Accordingly, the trial court did not err by dismissing the appellants cause of action against Cumberland.

Based on the foregoing, the order of the Pulaski Circuit Court is affirmed.

ALL CONCUR.

---

**30.** *Id.* at 538.