**CANEWOOD HOMEOWNERS ASSOCIATION, INC.,**
Appellant

v.

**WILSHIRE INVESTMENT PROPER-TIES LLC; Proturf Lawn & Land-scaping LLC; Proturf: Lawn & Land-scape, an Unregistered Partnership of Donald G. Wilshire and Charles Helms, Jr.; Donald G. Wilshire; and Charles Helms, Jr., Appellees**

NO. 2015–CA–001779–MR

Court of Appeals of Kentucky.

FEBRUARY 10, 2017

BRIEFS FOR APPELLANT: John N. Billings, Christopher L. Thacker, Christopher P. Farris, Stephen F. Wilson, Lexington, Kentucky

ORAL ARGUMENT FOR APPELLANT: Christopher P. Farris, Lexington, Kentucky

BRIEF AND ORAL ARGUMENT FOR APPELLEES: William W. Allen, Lexington, Kentucky

BEFORE: KRAMER, CHIEF JUDGE; D. LAMBERT AND TAYLOR, JUDGES.

## OPINION REVERSING AND REMANDING

TAYLOR, JUDGE:

Canewood Homeowners Association, Inc., brings this appeal from an October 23, 2015, Order of the Scott Circuit Court granting judgment in favor of Wilshire Investment Properties LLC; Proturf Lawn & Landscaping LLC, Proturf: Lawn & Landscape, an unregistered partnership of Donald G. Wilshire and Charles Helms, Jr., Donald G. Wilshire, and Charles Helms, Jr., and the court's order of November 5, 2015, denying appellant's Kentucky Rules of Civil Procedure (CR) 59 motion. We reverse and remand.

In early 1994, Canewood Subdivision was created in Scott County, Kentucky, by Canewood LLC, (Developer). On March 2, 1994, Developer and the owner of the property to be developed filed in the office of the Scott County Clerk a Declaration of Covenants, Conditions, Restrictions, Reservations and Easements Pertaining to Canewood Subdivision Unit 1–A Section 1 (Master Declaration) for the purpose of establishing and creating "a residential subdivision with provisions for the common use, enjoyment and maintenance of the Golf Course, Common Areas and Landscape Areas." Master Declaration at 1. The term "Golf Course" was defined as including "any recreational facilities erected for the common use and enjoyment of the 'Owners,' including, without limitation, a clubhouse, pool and any other ancillary facilities or structures provided for such purpose." Master Declaration at 3. The Master Declaration also called for the formation of Canewood Homeowners Association, Inc. (HOA).

On December 10, 2007, Developer recorded a Declaration of Reciprocal Easements and Restrictions (Reciprocal Restrictions). The Reciprocal Restrictions provided that it was designed to "restrict the uses to which the Clubhouse Lot may be used and to provide for the integrated use of the Golf and Swimming Facilities and the Clubhouse Lot." Reciprocal Restrictions at 1. Relevant to this appeal, the Reciprocal Restrictions specifically limited the Clubhouse Lot's use to a restaurant. And, the Reciprocal Restrictions provided that only the Developer, the HOA, or the owner of the Clubhouse Lot could enforce the restrictions contained therein.

Also, by deed recorded December 10, 2007, Developer conveyed to Wilshire In-

vestment Properties, LLC (Wilshire) a .367–acre lot which included a structure known as the Clubhouse (Clubhouse Lot). Wilshire intended to operate a restaurant open to the public on the Clubhouse Lot. The deed conveying the Clubhouse Lot to Wilshire described the property as follows:

> Being all of that certain property designated as Clubhouse Lot (0.367 acres) as shown on the Minor Subdivision Plat Canewood Clubhouse Lot, No. 124 General John Payne Boulevard, Georgetown, Scott County, Kentucky, of record in Plat Cabinet 9, Slide 357, in the Scott County Clerk's Office, to which plat reference is hereby made for a more particular description being known and designated as 124 General Payne Boulevard[.]

It appears that the .367–acre Clubhouse Lot was comprised solely of property from the Golf Course as defined in the Master Declaration of March 2, 1994. The Clubhouse Lot is immediately adjacent to the Golf Course and the swimming facility. Both the Golf Course and the swimming facility properties were retained by the Developer in 2007. There is no dispute that the Developer intended in 2007 for the Clubhouse Lot to be subject to the Reciprocal Restrictions and for the use of the Clubhouse Lot to be integrated with the golf course and swimming facility.

On January 1, 2014, Developer and the HOA entered into a Memorandum of Lease which provided that Developer would lease Canewood's Golf Course to the HOA for a period of five years. Shortly thereafter, by deed executed January 23, 2014, the Developer conveyed to Wilshire additional property that expanded the acreage of the Clubhouse Lot. On the same date, January 23, 2014, the Developer and Wilshire also executed a Readopted, Amended and Restated Declaration of Reciprocal Easements and Restrictions (Readopted Restrictions). The Readopted Restrictions expanded the uses of the Clubhouse Lot to include: (1) restaurant, (2) retail establishment, (3) bed and breakfast, (4) tourist or historic attraction, (5) offices and, (6) residence. However, the Readopted Restrictions provided that only the Developer or Wilshire could enforce the restrictions upon the Clubhouse Lot. It should be emphasized that the HOA was not a party to the Readopted Restrictions and neither the HOA nor Wilshire were parties to the Reciprocal Restrictions filed by the Developer in 2007. Immediately after the recording of the Readopted Restrictions, the Developer also conveyed certain property identified as Lot 1 and containing the swimming facility to the HOA by deed also dated January 23, 2014.[1]

In May 2014, the HOA sent a notice letter to Wilshire stating it believed a lawn and landscaping business was being operated from the Clubhouse Lot in violation of the Reciprocal Restrictions and the Readopted Restrictions. Then, on July 9, 2014, the HOA filed a complaint against Wilshire in Scott Circuit Court. Inexplica-

---

1. In 2012, Canewood LLC (Developer), Wilshire Investment Properties, LLC (Wilshire), the Canewood Homeowners Association, Inc. (HOA), and various other parties had engaged in litigation in Fayette Circuit Court (Action No. 12–CI–02998) regarding various claims between the parties. In October 2013, the parties to the litigation entered into a settlement agreement, and by order entered on December 4, 2013, the action was dismissed. Unfortunately, this settlement agreement nor the judgment were entered into the record of this action although both parties allude to the agreement in their briefs. As a result of the settlement, both parties acknowledge that the Clubhouse Lot was no longer subject to the restrictions of the Master Declaration. The deed executed on January 23, 2014, conveying the Golf Course's swimming facility by the Developer to the HOA references the Fayette Circuit Court litigation and further states that the Readopted Restrictions were filed of record immediately prior to the conveyance to the HOA.

bly, the Developer was not named a party to this action.[2] An Amended Complaint was subsequently filed on July 23, 2014, naming as defendants Wilshire Investment Properties, LLC, Proturf Lawn & Landscaping LLC, Proturf: Lawn & Landscape, an unregistered partnership of Donald G. Wilshire and Charles Helms, Jr., Donald G. Wilshire, and Charles Helms, Jr. (collectively referred to as appellees). In the Amended Complaint, the HOA alleged appellees had violated the terms of the Readopted Restrictions by operating or allowing others to operate a lawn and landscaping business from the Clubhouse Lot. The HOA further alleged that appellees failed or refused to bring the property into compliance with said Restrictions despite protests by the HOA.

Appellees filed an answer on August 4, 2014. For over ten months, this action was dormant and no discovery was taken. On June 23, 2015, HOA filed a motion for summary judgment. On July 24, 2015, appellees filed a motion for judgment on the pleadings. In their motion, appellees argued that the Reciprocal Restrictions from 2007 upon the Clubhouse Lot were effectively rescinded by the adoption of the Readopted Restrictions in 2014 and that the HOA ratified the Readopted Restrictions by its execution of the January 23, 2014, deed. Appellees further argued that under the Readopted Restrictions, the HOA was not empowered to enforce the use restrictions appurtenant to the Clubhouse Lot; rather, only the Developer and Wilshire possessed such authority under the terms of the Readopted Restrictions.

By order entered October 23, 2015, the circuit court agreed with appellees and granted the motion for judgment on the pleadings. The circuit court specifically stated:

The Court agrees with the HOA that generally a holder of the benefit of a servitude has the right to enforce the servitude. However, in this case, the plain language as emphasized in bold letters above in the express agreement between the Developer and the HOA in the January 23, 2014[,] deed conveying Lot 1 between them states that the HOA "agrees to accept, hold, use, and abide that Portion of Lot 1 in compliance with the terms and conditions of the Declarations." In essence, the HOA agreed to ratify the terms of the Readopted Restrictions, which grants Wilshire and the Developer the right to enforce the use restrictions on the Clubhouse Lot. It is true the Readopted Restrictions give the HOA the right to enforce its "parking and access easements on, over and across the Clubhouse Lot ...", but that is the extent of the express agreement. Readopted Restrictions section 4.7. This deed is the last word on the matter from the four sources that the HOA claims grant the right to enforce the use restrictions on the Clubhouse Lot because the deed to the swimming facilities came after the golf course lease and therefore precludes any third party beneficiary rights the HOA claim. Accordingly, the HOA, by agreement, relinquished any right it may have had pursuant to the Restatement (Third) of Property: Servitudes (2000) § 8.1. to enforce the Clubhouse Lot use restrictions. (Citations omitted.)

Wherefore, based upon the foregoing, [Wilshire's] Motion for Judgment on the Pleadings is GRANTED and [HOA's] motions are DENIED. There being no just cause for delay, this is a final and appealable Order.

Order at 4–5. Thus, the circuit court concluded that the HOA "relinquished" its

---

2. This was presumably due to the settlement in the Fayette Circuit Court action.

right to enforce the restrictions upon the Clubhouse Lot by its execution of the January 23, 2014, deed and the court effectively agreed with appellees that HOA lacked standing to enforce the 2014 Readopted Restrictions. This appeal follows.

■ In the October 23, 2015, order, the circuit court recited that it was granting Wilshire's motion for judgment on the pleadings. However, the circuit court's order clearly demonstrates that it considered matters outside the pleadings. When matters outside the pleadings are considered by the circuit court, we must treat it as a motion for summary judgment. *Waddle v. Galen of Kentucky, Inc.*, 131 S.W.3d 361 (Ky. App. 2004). Summary judgment is proper where there exists no genuine issue of material fact and movant is entitled to judgment as a matter of law. CR 56; *Waddle*, 131 S.W.3d 361. And, to defeat a properly supported motion for summary judgment, the opposing party must present at least some affirmative evidence demonstrating a genuine issue of material fact. *Waddle*, 131 S.W.3d 361; *Steelvest, Inc. v. Scansteel Service Center, Inc.*, 807 S.W.2d 476 (Ky.1991). Given that the summary judgment involves no fact finding, our review of the circuit court's decision is *de novo*. *3D Enterprises Contracting Corp. v. Louisville and Jefferson Cnty. Metro. Sewer Dist.*, 174 S.W.3d 440 (Ky. 2005).

■ The HOA contends that the circuit court erred by rendering summary judgment that concluded that the HOA "relinquished" the right to enforce the use restrictions upon the Clubhouse Lot by execution of the January 23, 2014, deed. For the following reasons, we agree with the HOA.

It is uncontroverted that the Reciprocal Restrictions were executed and filed by the Developer only in 2007 and that these restrictions specifically limited the use of the Clubhouse Lot to a restaurant:

No owner, occupant, lessee, or other person or entity shall operate on the Clubhouse Lot any business other than a restaurant operation of prepared ready to eat food items either for consumption on or off the premises which shall remain open to the general public, provided such restriction to use for restaurant operation shall allow the serving of alcoholic beverages for consumption on the premises. In addition to the uses set out herein, the operator of such restaurant may engage in the sale of such other gift and clothing items within the premises so long as they are merely incidental to the operation of the restaurant and that such space devoted to such use not exceed ten percent of the square foot area devoted to restaurant use.

Under the Reciprocal Restrictions, the HOA was expressly empowered to enforce covenants or restrictions thereunder:

Enforcement of this Declaration shall be by proceedings at law or in equity, brought by the owner of the Clubhouse Lot, by the Declarant, or by the Canewood Homeowners Association, Inc. (the "Association"), against any party violating or attempting to violate any covenant or restriction, either to restrain violation, to direct restoration, or to recover damages.

Some seven years thereafter, in 2014, the Developer and Wilshire executed the Readopted Restrictions as to the Clubhouse Lot, Golf Course, and swimming facility. Under the Readopted Restrictions, the uses of the Clubhouse Lot were expanded to:

(i) a restaurant operation of prepared ready to eat food items either for consumption on or off the premises which shall remain open to the general public, provided such restriction to use for restaurant operation shall allow the serving

of alcoholic beverages for consumption on the premises and other operations associated with full service restaurants, including indoor or outdoor entertainment, weddings, receptions, rehearsal dinners and social events, (ii) a retail establishment, (iii) a bed and breakfast, (iv) a tourist or historic attraction, (v) offices or (vi) a residence.

However, the Readopted Restrictions specifically provided that only the Developer or Wilshire was entitled to enforce the use restrictions upon the Clubhouse Lot:

> Enforcement of this Amended and Restated Declaration shall be by proceedings at law or in equity, brought by the Owner of the Clubhouse Lot or by the Declarant against any party violating or attempting to violate any covenant or restriction, either to restrain the violation, to direct restoration, or to recover damages[.]

Again, we note that the HOA was not a party to the Readopted Restrictions, nor is there any explanation in the record why they were excluded, given the HOA had leased the golf course from the Developer on January 1, 2014.

The Readopted Restrictions were filed of record "immediately prior" to the filing of the deed dated January 23, 2014, from the Developer to the HOA, conveying certain real property designated as Lot 1 and known as the swimming facility. The deed was tendered as part of a settlement in late 2013 between the parties arising from litigation in Fayette Circuit Court between the HOA, Developer, Wilshire and others. Unfortunately, we cannot determine the relevance of the terms of the settlement to this case as it is not part of the record below or on appeal. However, the Deed to the HOA was from the Developer only and appellees are not parties to this deed. Instrumental to this appeal is the following language contained in the January 23,

2014, deed of conveyance from the Developer to the HOA:

> The Grantor has submitted a portion of Lot 1 as shown on the plat of record in Plat Cabinet 11, Slide 108 in the Scott County Clerk's Office to the Declarations and the **Grantee, for itself and its successors and assigns hereby agrees to accept, hold, use, and abide that Portion of Lot 1 in compliance with the terms and conditions of the Declarations.** (Emphasis added.)

The circuit court interpreted the above language as manifesting the HOA's ratification of the terms of the Readopted Restrictions and by so doing relinquishing the HOA's right to enforce restrictions upon the Clubhouse Lot that it had been granted in 2007. We believe the circuit court's interpretation of the January 23, 2014, deed was overly broad and erroneous as a matter of law.

It is well-established that the interpretation of a deed presents an issue of law. *Phelps v. Sledd*, 479 S.W.2d 894 (Ky. 1972). The terms of a deed are generally given their ordinary meaning, and a deed must be interpreted as a whole. *Id.; C.W. Hoskins Heirs v. Boggs*, 242 S.W.3d 320 (Ky. 2007).

Under the plain language of the January 23, 2014, deed, the HOA, as grantee, agreed to accept and abide by the Readopted Restrictions as to Lot 1, the lot conveyed thereunder. The precise terms of the January 23, 2014, deed read that the "Grantee [HOA] ... hereby agrees to accept, hold, use, and abide that Portion of Lot 1 in compliance" with the Readopted Restrictions. By such terms, the HOA did not, however, agree to accept or abide by the Readopted Restrictions as to any other lot, in particular the Clubhouse Lot, nor did it agree to nor was it a party to the Readopted Restrictions generally. The language of the January 23, 2014, deed clearly

manifested the parties' intent that Lot 1 (the swimming facility) be bound by the Readopted Restrictions, and this interpretation is consistent with the purpose of the January 23, 2014, deed which was to convey Lot 1, with any appurtenant restrictions thereon, to the HOA.

Hence, under the terms of the January 23, 2014, deed, the HOA agreed to abide by the Readopted Restrictions as to Lot 1 only and nothing more. The HOA did not surrender its rights under the 2007 Reciprocal Restrictions to enforce the use restrictions on the Clubhouse Lot especially since it was not a party to the Readopted Restrictions. To conclude otherwise would completely undermine the entire restrictive scheme for the development from its creation which was to promote a residential subdivision in conjunction with the use and enjoyment of a golf course. In other words, the entire development was premised upon the facilitation of a golf course community. When reviewing restrictive covenants like those set out in this case, an important factor in determining what was intended by the parties is the general scheme or plan of the development and the attending circumstances. *Colliver v. Stonewall Equestrian Estates Assoc., Inc.*, 139 S.W.3d 521 (Ky. App. 2004). At all times during the history of this development, its focus was to be a residential golfing community. Given that the golf course was leased by the Developer to the HOA on January 1, 2014, prior to the adoption of the Readopted Restrictions, we believe the development scheme provided for the HOA to retain the right to enforce the use restrictions on the Clubhouse Lot.[3]

The circuit court erred as a matter of law by interpreting the January 23, 2014, deed otherwise and entry of summary judgment based upon the language of the deed was improper. For this reason, we reverse the circuit court's summary judgment in favor of appellees and remand for additional proceedings on the HOA's amended complaint below.

For the foregoing reasons, the Order of the Scott Circuit Court is reversed and remanded for proceedings consistent with this opinion.

ALL CONCUR.

---

**3.** The record reflects that the court's order granting Wilshire a judgment on the pleadings was entered on October 23, 2015. However, on October 21, 2015, the Developer transferred title to the golf course by deed to an affiliate or entity related to the HOA. That entity immediately moved to intervene in this action on October 23, 2015, which the court denied in its order of November 5, 2014, which also denied the HOA's Kentucky Rules of Civil Procedure 59 motion to alter, amend or vacate the order entered on October 23, 2015. The court acknowledged at the hearing on November 5 that the transfer of the golf course would likely support standing by the owner of the golf course to assert a new action to enforce use restrictions against the Clubhouse Lot. Given that the integrated use of the golf course, swimming facility and Clubhouse Lot is clearly contemplated in the development scheme for the Canewood Subdivision, it would best serve the interests of all of the affected parties, as well as judicial economy, for all claims in this action to be adjudicated collectively in one action.